## STATE OF CONNECTICUT *v.* WILLIAM RUFFIN
### (13185)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued February 4—decision released March 29, 1988

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *Warren Maxwell,* assistant state's attorney, for the appellee (state).

GLASS, J. After a trial by jury, the defendant, William Ruffin, was found guilty of the crime of murder in violation of General Statutes § 53a-54a.[1] In this appeal

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes

from the judgment rendered in accordance with the verdict, the defendant claims that the trial court erred in: (1) excluding defense evidence relevant to proving the absence of motive; and (2) excluding on hearsay grounds evidence offered to show the defendant's state of mind on the evening of the shooting. We find no error.

The jury could reasonably have found that on November 11, 1985, the victim had been living in the rear first floor apartment of a house located on Edgewood Street in Hartford. The victim, referred to at the trial by his nickname "Creeper," was living with Julianne M., her three children, her sixteen year old niece and her niece's infant son. The group had been living in the Edgewood Street apartment for about one month.

At about 10:30 p.m., the victim was watching television with the members of the household in the living room. The defendant knocked on the door and was admitted into the apartment. Julianne was seated by the front door of the living room and the left side of her chair faced the doorway. Creeper, dressed only in blue jeans, was lying on the couch. The defendant walked over to the couch and sat on a nearby radiator. He asked Creeper what was happening and the two

---

a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of the person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

men went into the kitchen for about five minutes. Julianne heard the defendant ask Creeper if he was going out and Creeper responded that he "wasn't going anywhere." As the men left the kitchen the defendant told Creeper, "You want to be home with these skunky bitches, then I'll leave you home."

The defendant then walked to the front door with Creeper following him. As he was going out the front door the defendant said that his name was Billy Ruffin and that he was the "magic man." The hallway light was not working. As the defendant reached the banister at the other end of the hallway, Creeper was just entering the hallway from the apartment. The defendant pulled a gun from inside his jacket and started shooting. The first shot hit Creeper on the top of his head, the second shot hit him in the abdomen and also grazed Julianne's back. Creeper fell to the floor face up. The defendant ran out the door and up the street. He then went to a friend's apartment on Sigourney Street, and then to East Hartford where he stayed for a few days.

Later on the evening of the crime, the defendant called Julianne and asked her what was going on. She told him that he knew what was going on and she asked him why he had shot Creeper. The defendant replied that he had not shot Creeper and he asked her, "Didn't you see someone behind the door?" She replied, "No, I just only seen you when you pulled the gun out and started shooting it."

I

The defendant's first claim is that the trial court erred in excluding defense evidence relevant to proving the absence of a motive. During his direct examination the defendant was asked about an incident that he said had occurred several days prior to the shooting. The state objected on the ground of relevancy. In the absence of

the jury the defendant made an offer of proof, stating that about three days before the shooting the victim had been in jail charged with assault and the defendant had arranged a bail bond for his release. The defendant argues that the evidence that he had arranged for the victim's bail bond indicated the good relationship between them, and the unlikelihood of the defendant harming the victim.

We have stated that because "[m]otive is not an element of the crime charged . . . the state is under no obligation to show a motive of the accused to commit the crime charged. *State* v. *Rathbun,* 74 Conn. 524, 529, 51 A. 540 [1902]. ' " Proof of motive is never necessary to support a conclusion of guilt otherwise sufficiently established, however significant its presence or absence, or its sufficiency, may be as bearing upon the issue of guilt or innocence." *State* v. *Pisano,* 107 Conn. 630, 632, 141 A. 660 [1928].' *State* v. *Guilfoyle,* 109 Conn. 124, 140, 145 A. 761 [1929]. The presence or absence of motive, however, is a circumstance to be weighed with other evidence for the jury to consider. *State* v. *Rathbun,* supra." *State* v. *Annunziato,* 169 Conn. 517, 530, 363 A.2d 1011 (1975).

The defendant argues that the excluded testimony would have shown the friendship and good relations existing between the defendant and the victim, leading to an inference that the defendant had not shot the victim because he had no motive to do so. Our review of the record, however, reveals that substantial testimony had already been presented demonstrating that friendly relations existed between the defendant and the victim. Four witnesses testified that the defendant and the victim were friends. Three witnesses testified that the defendant had frequently stayed at the victim's apartment. Finally, the defendant testified that he and the victim were good friends and that they frequently stayed at each other's apartments. Thus, evi-

dence indicating a lack of motive had been presented to the jury, and the additional evidence proffered by the defendant was cumulative. The trial court did not abuse its discretion in excluding the proffered testimony.

The defendant also argues that the exclusion of the "motive" testimony deprived him of his right to testify in his own defense, in violation of his rights guaranteed by the fifth, sixth and fourteenth amendments to the United States constitution. The defendant acknowledges that he did not raise this claim at trial, or in his initial brief, but seeks *Evans*[2] review of this claim. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). " 'Generally, however, the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved.' *United States ex rel. Bibbs* v. *Twomey,* [506 F.2d 1220, 1222 (7th Cir. 1974)]; *Grundler* v. *North Carolina,* 283 F.2d 798, 802 (4th Cir. 1960)." *State* v. *Periere,* 186 Conn. 599, 611, 442 A.2d 1345 (1982). The record does not indicate that the exclusion of the "motive" testimony resulted in a denial of fundamental fairness or the denial of any specific constitutional right of the defendant. This claim was not properly preserved in the court below and because no constitutional right is implicated, we decline to review it on appeal.

## II

The defendant's second claim is that the trial court erred in excluding, on hearsay grounds, evidence offered to show the defendant's state of mind on the

---

[2] In *Evans,* we held that we would review a claim of error not properly preserved in the trial court under "exceptional circumstances." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). An exceptional circumstance "may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id.

evening of the shooting. In an offer of proof made outside of the jury's presence, the defendant testified that about three weeks or one month before the shooting, in his presence, James Cameron had threatened the victim's life with the words "Get ready for guerrilla warfare." The defendant also testified that approximately one week before the shooting, someone had "shot up the house" and that that incident caused the defendant to believe that Cameron was following through on his threat. He testified further that "I was thinking that maybe I have something to do with all of these problems that was coming out," and as a result, "I told Creeper that I was going to pull out, that I was going back up to Homestead." The defendant argues that the excluded testimony was not being offered to show or imply that someone else shot the victim, but rather to show his state of mind and his reasons for leaving the victim's apartment. The state concedes that the testimony was not hearsay, but argues that the trial court properly excluded the testimony because it was cumulative and irrelevant.

We note that "[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); see also *State* v. *Vincent,* 194 Conn. 198, 204 n.8, 479 A.2d 237 (1984); *State* v. *Assuntino,* 180 Conn. 345, 353, 429 A.2d 900 (1980). We have stated that "[o]ut-of-court statements to a person are admissible to show his state of mind where his mental state is relevant. *State* v. *Brokaw,* 183 Conn. 29, 32, 438 A.2d 815 (1981); *Zenik* v. *O'Brien,* 137 Conn. 592, 598, 79 A.2d 769 (1951)." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988). " 'It is a reasonable exercise of judicial discretion to exclude questions which would introduce issues foreign to the case; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490 [1952];

or evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 [1964].' *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969). We have reiterated that evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978)." *State* v. *Talton,* 197 Conn. 280, 284–85, 497 A.2d 35 (1985).

The record does not support a claim that the defendant's state of mind was relevant. Other than the defendant's bald assertion that about three weeks before the shooting he had heard Cameron utter the threatening words, the record does not support a claim that the defendant's state of mind was at issue. The record does not identify Cameron nor does it indicate Cameron's relationship with the victim or the defendant. In his offer of proof the defendant set forth no evidence that he saw Cameron at the scene of the shooting. We are unable to discern from the record how alleged prior threats by Cameron could possibly have affected the defendant's state of mind on the night of the crime and cause him to flee from the scene of the crime, and remain away from his apartment for approximately two days. We agree with the state that the defendant's state of mind evidence was irrelevant, and hold that the trial court did not err in excluding this evidence.

Finally, the defendant claims that the admission of the excluded testimony was integral to his defense because the key issue in the trial was the eyewitnesses' identification of the defendant rather than the eyewitnesses' credibility. Careful review of the record, however, reveals that the evidence of the identification of the defendant was substantial. Particularly significant

is the eyewitness testimony of Julianne who had known the defendant for several years. The defendant on many occasions had visited and lived at the home that Julianne shared with the victim. Julianne stated that as the defendant left the apartment he identified himself and said that he was the "magic man." Furthermore, there is no indication in the record that she was equivocal at any time regarding her testimony. In fact, she accused the defendant of shooting the victim when he called her on the night of the crime. Moreover, three other witnesses who testified about the crime knew the defendant. One witness heard the gunshots, saw the defendant in the hallway with a black gun, and watched him run away. Two witnesses saw the defendant running away immediately after they heard the gunshots. One of these witnesses saw a black gun in the defendant's hand as he ran away. The outcome of the trial depended upon the jury's perception of the credibility of the witnesses and not upon their identification of the defendant.

There is no error.

In this opinion the other justices concurred.