STATE OF CONNECTICUT *v.* TREVOR PINNOCK
(14154)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 24, 1991—decision released January 14, 1992

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Trevor Pinnock, raises two issues concerning the sufficiency of the evidence to convict him and raises several other issues arising from the trial court's rulings throughout the course of his criminal trial. The defendant was charged with conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and attempted murder in violation of General Statutes §§ 53a-49[1] and 53a-54a. He was found guilty of both offenses by a jury, and was sentenced to a term of imprisonment of seventeen years on the attempt count and to a term of twenty years

---

[1] General Statutes § 53a-48 provides: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 53a-54a provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the

on the conspiracy count, the sentences to run consecutively for a total effective sentence of thirty-seven years imprisonment. Thereafter, he appealed to this court. We affirm the judgment of the trial court.

---

defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

General Statutes § 53a-49 provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

The jury could reasonably have found the following facts. The defendant and David Lewis[2] were friends. On September 18, 1988, they went to an athletic field contiguous to Goffe and County Streets in New Haven and played in a soccer game with other participants. Both left the game early. As they left the field together, they walked to Lewis' car, which was parked on County Street. They placed their soccer shoes in the car and each obtained an automatic handgun. Moments later, the defendant approached the car of Kenneth Pascoe. He raised the handgun, pointed it at Pascoe and said, "You're dead." Although the gun failed to discharge, Pascoe heard it "click" twice next to his ear. Immediately thereafter, Lewis, who was just across the street, fired his handgun at Fitzroy Pink, a good friend of Pascoe. At least three shots from Lewis' gun struck Pink, killing him. Following the shooting, the defendant and Lewis fled the scene together. In response to subsequent questioning by the New Haven police concerning this incident, the defendant attempted to deceive the police by giving a false name. At that time, he denied that he had played soccer on the date of the offense and denied that he had been in New Haven, or even in the United States, at that time. Further, he denied that he knew David Lewis. When an officer mentioned Pascoe's name, he reacted as though he were startled, but also denied knowing Pascoe. When Lewis was arrested one year after this offense, he was carrying an identification card bearing the name and photograph of the defendant.

The defendant claims that: (1) there was insufficient evidence to convict him of either conspiracy to commit murder or attempt to commit murder; (2) the trial

---

[2] In a separate trial, Lewis was convicted of murder and conspiracy to commit murder for his involvement in the described events. Lewis appealed, and we affirmed his convictions in *State* v. *Lewis*, 220 Conn. 602, 600 A.2d 1330 (1991).

court violated his sixth and fourteenth amendment right to confront his accusers by preventing him from impeaching the veracity of a state's witness by eliciting the title of an offense of which the witness had previously been convicted, and by preventing him from eliciting information concerning the relationship between a plea bargain and that witness' testimony in this case; (3) the jury failed to follow the instructions of the trial court; (4) the jury should have been charged regarding the state's lack of evidence of motive; and (5) the court should not have delivered a "Chip Smith" charge.

I

The defendant first claims that there was insufficient evidence to convict him of either conspiracy to commit murder or attempt to commit murder. Regarding the conspiracy count, he claims that the state failed to prove beyond a reasonable doubt that the defendant intended to agree with Lewis to cause the death of Pink or that he intended to cause the death of Pink. Regarding the attempt count, the defendant claims that there was insufficient evidence to demonstrate that he intended to cause the death of Pascoe. We conclude that the evidence was sufficient to support the jury's verdict on both counts.

"The standard of review of an insufficiency claim is clear. 'We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215

Conn. 231, 253, 575 A.2d 1003, cert. denied, U.S.
 , 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State*
v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283
(1987); *State* v. *Garrison,* 203 Conn. 466, 471, 525 A.2d
498 (1987)." *State* v. *Lewis,* 220 Conn. 602, 606, 600
A.2d 1330 (1991). While the jury must find every ele-
ment proven beyond a reasonable doubt in order to find
the defendant guilty of the charged offense, each of
the basic and inferred facts underlying those conclu-
sions need not be proved beyond a reasonable doubt.
*State* v. *Castonguay,* 218 Conn. 486, 507, 590 A.2d 901
(1991). If it is reasonable and logical for the jury to con-
clude that a basic fact or an inferred fact is true, the
jury is permitted to consider the fact proven and may
consider it in combination with other proven facts in
determining whether the cumulative effect of all the
evidence proves the defendant guilty of all the elements
of the crime charged beyond a reasonable doubt. *State*
v. *Grant,* 219 Conn. 596, 604–605, 594 A.2d 459 (1991).

## A

The defendant was charged in one count with the
offense of conspiracy to commit murder in violation of
General Statutes §§ 53a-48 and 53a-54a. "To establish
the crime of conspiracy under § 53a-48 of the General
Statutes, it must be shown that an agreement was
made between two or more persons to engage in con-
duct constituting a crime and that the agreement was
followed by an overt act in furtherance of the con-
spiracy by any one of the conspirators." (Internal quo-
tation marks omitted.) *State* v. *Beccia,* 199 Conn. 1, 3,
505 A.2d 683 (1986). To prove the offense of conspiracy
to commit murder, the state must prove two distinct
elements of intent: that the conspirators intended to
agree; and that they intended to cause the death of
another person. Id., 4. To convict the defendant of the
offense as charged in this case, the jury, therefore,
necessarily had to find that: (1) the defendant and Lewis

intentionally agreed to cause the death of another person; (2) at the time of the agreement, the defendant intended that a death be caused; and (3) the defendant or Lewis committed an overt act in furtherance of the conspiracy by shooting and killing Pink. "While the state must prove an agreement, the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . *State* v. *Ghere,* 201 Conn. 289, 299, 513 A.2d 1226 (1986)." (Internal quotation marks omitted.) *State* v. *Lewis,* supra, 607.

There was sufficient evidence to allow the jury to conclude that the state proved beyond a reasonable doubt that the defendant and Lewis conspired to kill Pink. From the actions of the defendant and Lewis close to the time of Pink's death, the jury could have concluded beyond a reasonable doubt that the two agreed to and intended to kill Pink, and that Pink was killed in furtherance of that agreement. The defendant and Lewis were together immediately prior to the killing of Pink. They played soccer together, left the game early together and walked to Lewis' car together. The jury could reasonably have inferred that the two men, who were wearing sweatsuits, were not carrying handguns while they played soccer, and that they obtained guns together from Lewis' car. Moments after securing the guns, the two men parted. The defendant approached Pascoe and Lewis killed Pink. The murder and the incident involving the defendant and Pascoe occurred only seconds apart and within approximately three car lengths of one another on the same street in the city of New Haven. The defendant and Lewis were friends and the two victims were close friends. Further, after their individual criminal actions, the defendant and Lewis ran from the scene together, and one year after

the crimes, Lewis had the defendant's identification card in his possession. The jury could reasonably have found that the defendant's conduct in pointing a gun at Pascoe and stating, "You're dead," and Lewis' killing of Pink were not merely coincidental. Because of the proximity in time and place and the interaction between the defendant and Lewis, both before and after the incidents, and because of the similarity of their conduct with the handguns, the jury could properly have found that the actions of the defendant and Lewis were planned and agreed to at some prior time. The jury could also have found that the agreement was intended, that the men intended to cause the death of Pink, and that an overt act was completed in furtherance of the agreement.

The defendant also asserts that the state's failure to prove any motive in this case necessarily clouded the issue of the defendant's guilt with a reasonable doubt, requiring a judgment of acquittal. While motive is not an element of a crime that the state has the burden of proving, the presence of evidence of motive may strengthen the state's case. *State* v. *Ruffin,* 206 Conn. 678, 681, 539 A.2d 144 (1988). It is conceivable that the evidence adduced in a particular case would be so inconclusive that without evidence of motive a judgment of acquittal might be required because the jury could not rationally find that the state had proved the elements of the charged offense beyond a reasonable doubt. In such a case, a judgment of acquittal might be required not because motive was an element of the offense, but because evidence of motive would strengthen the state's otherwise insufficient evidence of an element of the offense, such as identification or intent.

There is, however, only a very limited category of cases in which a lack of proof of motive would mandate a judgment of acquittal. The instant case is not

in that category. Here, the jury need not have found a motive to have reached a rational determination that the defendant and Lewis conspired to kill Pink. The synchronization of their actions from when they left the soccer field until after they fled the scene, and the defendant's later deceit, was sufficient for the jury reasonably to conclude that the two men had entered a conspiracy to kill Pink. While the presence of motive would have strengthened the state's case, its absence does not mandate a judgment of acquittal.

## B

The defendant next asserts that there was insufficient evidence to prove him guilty of attempt to commit murder in violation of General Statutes §§ 53a-54a and 53a-49. We disagree.

The charge of attempt to commit murder arises from the incident in which he approached Pascoe while Pascoe was seated in his car and pointed an automatic handgun at him. While aiming the gun at Pascoe, the defendant told Pascoe, "You're dead." At that time, Pascoe heard the gun make two clicking sounds next to his ear, but the weapon did not discharge. Pascoe immediately drove his car, which had been idling, away from the defendant. As he began to drive away, he heard the shots from Lewis' gun that resulted in Pink's death.

"Under General Statutes § 53a-49 (a) (2), '[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' . . . *State* v. *Green*, 194 Conn. 258, 272, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985).

Furthermore, the actor's intent can be inferred from his or her verbal or physical conduct and the surrounding circumstances. Id., 273. ' "[T]he attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." ' *State* v. *Lapia,* 202 Conn. 509, 515, 522 A.2d 272 (1987), quoting *State* v. *Wilson,* 30 Conn. 500, 506 (1862)." *State* v. *Anderson,* 211 Conn. 18, 27, 557 A.2d 917 (1989).

On the basis of the evidence adduced at trial, the jury could reasonably have found that the defendant intended to kill Pascoe and that his actions constituted a substantial step toward achieving that objective. From the evidence, the jury could reasonably have inferred that the defendant and Lewis agreed to kill Pink. See Part 1A of this opinion. It was also reasonable for the jury to infer that the defendant had the intent to murder Pink on the same street and at the same time that he approached Pascoe with a gun. Accordingly, in determining the defendant's guilt under the attempt count, the jury could properly have viewed the defendant's actions concerning Pascoe in light of the fact that he had agreed to kill Pink, and that Pink was, in fact, killed. The defendant's actions that are alleged to constitute the attempt occurred in the short period between the time that Lewis and the defendant secured handguns from Lewis' car and the time that Lewis shot Pink. In that time, the defendant approached Pascoe and threatened him with death. From all the circumstances, the jury could reasonably have determined that the clicking sound made by the gun near Pascoe's ear was caused by the defendant's attempt to fire the gun or to prepare the gun to fire. While the testimony at trial indicated that there were other conceivable explanations for why the gun clicked, some consistent with an attempt on Pascoe's life and

some inconsistent with such an attempt, the jury was not bound to credit those that were inconsistent with an attempt. The defendant's statement, "You're dead," in conjunction with the clicks while he pointed his gun at Pascoe, and the inference that Lewis and the defendant agreed to kill Pink, and the fact that Pink was killed only moments later, allowed the jury reasonably to infer that the defendant intended to and believed that he was about to kill Pascoe. Had the jury found that the defendant was readying or endeavoring to fire his gun in an attempt to kill Pascoe and that he had the intent to kill Pascoe, the fact that the gun ultimately failed to discharge would not preclude the jury from finding the defendant guilty of attempted murder. *State* v. *Anderson,* supra. Accordingly, we conclude that there was sufficient evidence to prove beyond a reasonable doubt that the defendant attempted to kill Pascoe.

## II

Next, the defendant claims that in two distinct ways he was deprived of his right under the sixth and fourteenth amendments to the federal constitution to confront his accusers.[3] First, he argues that his right of confrontation was violated because the trial court refused to allow him to elicit the title of an offense of which Pascoe had been convicted, for the purpose of impeaching Pascoe's veracity. Second, he argues that he should have been allowed to explore Pascoe's potential bias in favor of the state by questioning Pascoe in the presence of the jury concerning any possible connection between his testimony in this case and a plea bargain entered into between Pascoe and the state in another case.

---

[3] The defendant also makes reference to the constitution of the state of Connecticut, but provides no independent analysis under its provisions. Accordingly, we do not review his state constitutional claims. *State* v. *McMurray,* 217 Conn. 243, 256 n.13, 585 A.2d 677 (1991).

## A

Prior to Pascoe's cross-examination, there was a colloquy among the court and counsel concerning the extent to which Pascoe's prior record would be admissible before the jury. At that time, the defendant asserted that he was entitled to elicit the fact that Pascoe had previously pleaded guilty to conspiracy to commit murder.[4] The trial court ruled that the defendant would not be allowed to elicit the title of the offense because it did not bear on Pascoe's veracity and because the jury might have been inclined to conclude improperly that the witness was a "bad person" and, such a conclusion would distract the jury from the issues properly before it. In the course of cross-examination, the defendant elicited other material relating to Pascoe's veracity. The jury became aware that Pascoe had been convicted of robbery in New York and of a second unspecified felony in Connecticut. It was also made aware that Pascoe had provided statements to the police that were inconsistent with his testimony on the witness stand. The court later instructed the jury that it could consider Pascoe's convictions as bearing on his credibility.

On appeal, the defendant claims that the court should not have limited his examination of Pascoe to eliciting his conviction of an unnamed felony, and that he should have been permitted to elicit the fact that Pascoe was convicted of conspiracy to commit murder. He asserts that the customary inquiry when prior convictions are

[4] At trial, counsel, the court and Pascoe all referred to the offense to which Pascoe had previously pleaded guilty as conspiracy to commit murder. At trial in *State* v. *Lewis,* 220 Conn. 602, 600 A.2d 1330 (1991), however, the offense was referred to as conspiracy to commit assault in the second degree. The judgment file of the New Haven Superior Court reflects that Pascoe actually pleaded guilty under the *Alford* doctrine to conspiracy to commit assault in the second degree. *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

introduced to impeach a witness' veracity includes the name of the crime and the date of the conviction. The defendant concedes that although he objected on other nonconstitutional grounds, his constitutional claim was not preserved at trial, and seeks review under the bypass doctrine set forth in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–41, 567 A.2d 823 (1989). He claims that review is warranted because his sixth and fourteenth amendment right of confrontation was violated by the trial court's ruling. We disagree.

In order to prevail on appeal on a constitutional claim, that has not been adequately preserved at trial, the defendant must meet all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40. We have also held that we "remain free to dispose of the claim 'by focusing on whichever condition is most relevant in the particular circumstances.' " *State* v. *Watlington,* 216 Conn. 188, 192, 579 A.2d 490 (1990), quoting *State* v. *Golding,* supra, 240.

Because the defendant has failed to demonstrate a constitutional violation that deprived him of a fair trial, he has failed to satisfy the third prong of the test set forth in *State* v. *Golding,* supra. Although cross-examination is the most effective means of confronting witnesses, not all limitations of that right are of constitutional dimension. *State* v. *Lewis,* supra, 622. "The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from

which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness." *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985). "Whether to permit cross-examination as to particular acts of misconduct to show a lack of veracity lies largely within the discretion of the trial court." Id., 401. Where the trial court allows significant cross-examination concerning a witness' veracity, it cannot be said that the constitutional right to confrontation is implicated. Here, the court allowed evidence that Pascoe had been convicted of two prior offenses. In addition to the cross-examination allowed by the court, the defendant sought only to ask Pascoe the title of the second of the two offenses. Because the court allowed significant cross-examination on the issue of Pascoe's veracity, we conclude that the defendant's right of confrontation was not violated. See *State* v. *Gooch,* 186 Conn. 17, 438 A.2d 867 (1982).

Further, we cannot agree that the trial court acted improperly in ruling on the defendant's preserved claim of nonconstitutional error. As a general proposition, prior convictions of a defendant are not admissible to impeach his veracity. *State* v. *Crumpton,* 202 Conn. 224, 228, 520 A.2d 226 (1987); *State* v. *Geyer,* 194 Conn. 1, 5, 480 A.2d 489 (1984). We have recognized exceptions to this general rule. "If a defendant in a criminal case has previously been convicted of crimes punishable by imprisonment for more than one year, a trial court may allow the state to introduce those convictions at a trial on subsequent charges as evidence related to the defendant's credibility, where credibility is in issue." *State* v. *Braswell,* 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). Before admitting such evidence, however, the trial court should weigh the following factors: " "(1) the extent of the prejudice likely to arise;

(2) the significance of the commission of the particular crime indicating untruthfulness; and (3) its remoteness in time.' " *State* v. *Crumpton,* supra, 228; *State* v. *Nardini,* 187 Conn. 513, 522, 447 A.2d 396 (1982). The result of a trial court's balancing of the prejudicial nature of the evidence against its probative value will not be overturned unless the trial court abused its discretion. *State* v. *Geyer,* supra, 11; *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970).

When a trial court concludes that the fact of a prior felony conviction is admissible to impeach a witness' veracity, generally both the title of the offense and the date of the conviction should be admitted before the jury. *State* v. *Geyer,* supra, 8; see *State* v. *English,* 132 Conn. 573, 580, 46 A.2d 121 (1946). We have held, however, that when the conviction at issue is not for an offense that reflects directly on the veracity of the person convicted of it, "the balance used to measure admissibility of prior convictions is weighted less heavily toward admitting the prior conviction . . . ." *State* v. *Geyer,* supra, 13. This is because criminal convictions "blemish the character of one so convicted," and "[a] juror might reasonably conclude that such a witness lacks to some degree the moral rectitude from which a witness's oath of honesty derives credibility." Id., 12–13. To avoid unwarranted prejudice to the witness, when a party seeks to introduce evidence of a felony that does not directly bear on veracity, a trial court ordinarily should permit reference only to an unspecified crime carrying a penalty of greater than one year that occurred at a certain time and place. Id., 16.

The defendant asserts that because the conviction in this case was that of a state's witness, and not the criminal defendant, the trial court should not have balanced the probative value of the title of the offense against its potential prejudice to the witness. While we recognized in *State* v. *Binet,* 192 Conn. 618, 623, 473 A.2d

1200 (1984), that " 'the danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence,' " we have never held that a trial court, in its discretion, may not consider the potential prejudice to a state's witness by the introduction of evidence purporting to bear on the witness' veracity.

In our view, in a determination of the admissibility of the details of a witness' felony convictions the trial court's analysis should not depend solely on whether the witness is a defendant. The raison d'etre for allowing a prior conviction into evidence to impeach a witness' veracity is that the conviction has some logical bearing on the witness' truthfulness. Where the name of a prior conviction is not probative of truthfulness, and may entice the trier of fact to view the witness negatively because of the prior bad act, the trial court has discretion to conclude that it should not be admitted. This view is reflected in the federal courts by a recent change in rule 609 (a) (1) of the Federal Rules of Criminal Procedure. Formerly, rule 609 (a) (1) was construed to allow the introduction of evidence of a conviction of a crime punishable by death or imprisonment for a period in excess of one year to attack the credibility of a witness. Only if the witness was the defendant was the trial court allowed to weigh its prejudicial effect against its probative value. *Green* v. *Bock Laundry Machine Co.*, 490 U.S. 504, 109 S. Ct. 1981, 104 L. Ed. 2d 557 (1989). In 1990, that rule was amended to allow the trial court to weigh the prejudicial effect of the evidence against its probative value, and to exercise its discretion, regardless of whether the witness was simply a witness or a criminal defendant.

In this case, the trial court acted within its discretion in excluding the title of the offense of which Pas-

coe was convicted. It is clear that Pascoe was a critical state's witness. The trial court was within its discretion in determining that knowledge of the title of the offense would not have allowed the jury properly to conclude that Pascoe was any less likely to be truthful than was discernible from the evidence of his conviction for an unspecified felony. It was also reasonable for the trial court to determine that knowledge of the title of the offense would have cast Pascoe's general character in an extremely bad light that was not directly related to his veracity.

We are not persuaded by the defendant's contention, moreover, that conspiracy is a crime of "calculation and planning," which bears on veracity and distinguishes it from other purely violent crimes and for that reason its title should have been admitted. While the offense of conspiracy is clearly distinct from the underlying offense, it is not especially illuminating on the issue of a conspirator's veracity. Unlike larceny crimes, which we have held do bear directly on the honesty of the offender; *State* v. *Carter,* 189 Conn. 631, 643, 458 A.2d 379 (1983); conspiracy crimes do not reflect on veracity to any greater degree than does the underlying offense. We have stated that "[a] conviction for a violent crime . . . has no direct bearing upon veracity . . . ." Id., 644. For that reason, evidence of violent crimes introduced to impeach the veracity of a witness should, within the discretion of the trial court, be admitted as unspecified crimes carrying a penalty of more than one year. *State* v. *Geyer,* supra, 16. An agreement to commit a violent offense such as murder does not suggest that the offender is any less honest or trustworthy than the murderer who, alone, plots the commission of the offense. Calculation and planning are not synonymous with dishonesty. The trial court could properly have found, in its judgment, that the prejudicial effect of the evidence outweighed its proba-

tive value. Accordingly, we conclude that the trial court did not abuse its discretion by allowing only a reference to an unspecified felony but excluding from evidence the fact that Pascoe had previously pleaded guilty to, and been convicted of, conspiracy to commit murder.

## B

Relying on his sixth and fourteenth amendment right to confront his accusers, the defendant claims also that he should have been allowed to question Pascoe directly before the jury about whether Pascoe's testimony in the instant case was related to a prior plea bargain agreement entered into by Pascoe and the state. We find no harmful error.

Out of the presence of the jury, it was revealed that Pascoe's conviction of the conspiracy to commit murder charge was obtained as a result of a plea agreement with the state. As a result of the plea bargain, Pascoe received a lesser sentence in return for his agreement to testify truthfully in an unrelated case. While conspiracy to commit murder carries a potential punishment of twenty years in prison, Pascoe bargained for and received a sentence of five years, which was suspended after two years. The state asserted that to its knowledge, there was no connection between the plea agreement and the instant case, and for that reason the details of that agreement should not be inquired into before the jury. While the jury was still out of the courtroom, both the trial court and the state questioned Pascoe concerning any connection between his plea agreement and his testimony in the instant case. Pascoe stated that he had agreed to testify truthfully in another case in return for the lesser sentence, but denied that there was any such agreement in connection with the instant case. The defendant asserted that neither he nor the jury should be required to accept the representations of the state and Pascoe, and that he

should be allowed to question Pascoe before the jury as to whether his testimony in the instant case was related to the reduced sentence he received in the prior case.[5] He did not, however, raise a constitutional claim. The court ruled that, since there was no connection between the two cases, any question to Pascoe in that regard would be irrelevant. The defendant took timely exception on evidentiary grounds to the court's ruling.

Upon the return of the jury, Pascoe was thoroughly cross-examined regarding his potential bias in favor of the state. The defendant elicited the fact that Pascoe had been convicted of a felony in Connecticut in December, 1989, and that his conviction resulted from a plea agreement between the state and Pascoe. Further, Pascoe admitted that he had received only a five year sentence, which was suspended after two years, despite the fact that he was subject to a maximum sentence of twenty years. He also admitted that he was released from prison only one month after he was convicted. Pascoe agreed that he had gotten a "very good deal" from the state. The defendant further elicited the fact that Pascoe was on probation at the time of his testimony in the instant case, and that he was in the custody of the state at the time that he made three separate identifications of the defendant.

Initially, the defendant again concedes that his constitutional claims were not preserved at trial, and requests that we review his claims under the doctrines of State v. Evans, supra, and State v. Golding, supra. Because we find that the trial court permitted sufficient cross-examination on the issue of Pascoe's bias, we conclude that there was no constitutional violation and that the defendant has not satisfied the third prong of the test set forth by State v. Golding, supra.

[5] The defendant stated that he wanted to ask Pascoe, "Was your testimony in this case a requirement or part of the agreement that resulted in the recommended sentence which you received in the case you were convicted for in Connecticut?"

"We have consistently held that when an accused has had the opportunity to elicit evidence of bias, not every limitation of the right to cross-examine is of constitutional dimension. The extent of cross-examination beyond that necessitated by the constitution rests within the discretion of the trial court." *State* v. *Lewis,* supra, 621–22. The defendant elicited sufficient information to allow the jury to infer that Pascoe was indebted to the state, and that as a result of Pascoe's probation, the state had leverage against Pascoe at the time of his testimony. The jury was aware that Pascoe had received a very good deal from the state just a short time prior to his testimony. It was also aware that Pascoe was on probation at the time of his testimony. From that evidence, the jury could reasonably have found that Pascoe was biased in favor of the state, and that as a result of that bias, he might conform his testimony to assist the state. Therefore, the defendant cannot prevail on his claimed violation of this right to confrontation.

Reviewing the defendant's remaining claim as evidentiary error, however, we conclude that the trial court's ruling was improper. A defendant is allowed to cross-examine the state's witnesses to the extent that his questions are relevant to the issues raised in the case, and are not more prejudicial than they are probative. Here, the defendant's question, namely, whether Pascoe had made a deal with the state, was relevant to Pascoe's potential bias in favor of the state. Although, out of the jury's presence, Pascoe denied any connection between the two cases, the final determination as to whether he was being truthful was one for the jury to make. The trial court's ruling that the evidence was irrelevant was apparently based on the court's favorable view of Pascoe's credibility and on

representations made by the state.[6] Questions of fact and of the credibility of witnesses, however, are within the purview of the jury, not the trial court. *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 544, 562 A.2d 1100 (1989). As Pascoe's voir dire indicated, he would likely have denied any connection between his plea agreement and the instant case before the jury. Thereafter, the credibility of Pascoe's testimony on that subject would properly have been a matter for the jury to consider. The hearsay representations by the state made out of the presence of the jury did not remedy the trial court's failure to allow the defendant to pose his question to Pascoe. The trial court's ruling, therefore, was improper.

Having determined that the trial court acted improperly, we must determine whether the ruling was harmful. We conclude that it was not. "Because the defendant's claim does not involve the violation of a constitutional right, the burden rests upon him to demonstrate the harmfulness of the court's error." *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980); *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). To demonstrate harmfulness, the defendant must show that it is more probable than not that the court's action affected the result of his trial. *State* v. *Payne,* 219 Conn. 93, 102–103, 591 A.2d 1246 (1991); *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988); *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). Although concededly Pascoe was a critical state's witness, the defendant was allowed to cross-examine him thoroughly. Thereby the jury was made aware that Pascoe had received a very favorable plea bargain because he had agreed to tes-

---

[6] The assistant state's attorney informed the court that he had been informed by his office that the plea agreement entered into by the state and Pascoe in the prior case was not related to the instant case, and to his knowledge there was no connection.

tify in another case, that the plea bargain had been entered into only a short time prior to Pascoe's testimony in this case, and that Pascoe was on probation at the time of his testimony. From that evidence, the jury could reasonably have found that Pascoe might be biased in favor of the state, and that as a result of that bias, he might wish to slant his testimony to assist the state. The defendant has not demonstrated that the court's action in preventing him from asking one further question of Pascoe probably affected the result of the trial. Therefore, the error was harmless.

## III

The defendant also claims that he is entitled to a new trial because the jury failed to follow the instructions of the trial court. We do not agree.

The trial court instructed the jury that "[t]he presumption of innocence . . . requires that if a piece of evidence is capable of two reasonable interpretations, one of which is consistent with innocence, you must adopt the interpretation consistent with innocence." That instruction is not an accurate statement of the law.[7] The defendant concedes that, in substance, the instruction was favorable to him, and does not claim that he suffered any harm as a result of the court's charging as it did.[8] He claims, however, that the court

[7] Both the state and the defendant concede that the court's instruction was improper and unduly favorable to the defendant. With respect to individual pieces of evidence, when the evidence is subject to two possible interpretations, the jury is not required to accept the interpretation consistent with innocence, but is allowed to choose the interpretation that it finds reasonable and logical. *State* v. *Grant,* 219 Conn. 596, 604, 594 A.2d 459 (1991).

[8] We have consistently held that a defendant cannot prevail on a claim that he has suffered harmful error as a result of an improper instruction to the jury if that instruction was unduly favorable to him. *State* v. *Snook,* 210 Conn. 244, 275, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Cochran,* 191 Conn. 180, 187–88, 463 A.2d 618 (1983); *State* v. *Hawthorne,* 175 Conn. 569, 574, 402 A.2d 759 (1978).

instructed the jury that it must follow the law as charged by the court, and that because the court instructed the jury to adopt each reasonable evidentiary interpretation consistent with innocence, the jury was bound to do so. The defendant asserts that there were many critical pieces of evidence in this case capable of two reasonable interpretations, one or more of which was consistent with innocence. Because the jury returned a verdict of guilty of both counts, the defendant claims it could not have followed the court's instructions, and that its verdict must be overturned. In making his claim, the defendant relies on *State* v. *Tinsley,* 181 Conn. 388, 404, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981).

We conclude that the jury's failure to follow one unduly favorable instruction cannot constitute harmful error. Clearly, the defendant would not have been entitled to the instruction had he requested that it be given. Similarly, he cannot demonstrate any harmful error by the jury's failure to follow the improper instruction. Although it appears that the defendant also claims that the jury did not follow other, accurate, instructions, he has not provided us with a sufficient basis to draw that conclusion. To the extent that *State* v. *Tinsley,* supra, is inconsistent with this opinion, we overrule it.

## IV

The defendant next asserts that he is entitled to a new trial because the trial court failed to instruct the jury on motive as the defendant requested. He claims that the instruction given to the jury regarding motive was "unbalanced and unfair." We find no harmful error.

At the close of evidence, the defendant submitted a written request to charge that asked the court to inform

the jury that if it found no evidence of motive in the case, that fact "may well tend" to raise a reasonable doubt as to the defendant's guilt.[9] The trial court declined to instruct the jury as the defendant requested and, instead, provided its own instruction on motive.[10] While the court's instruction alerted the jury to the fact that the state need not prove motive, it did not inform the jury that the state's failure to provide evidence of motive could possibly tend to raise a reasonable doubt as to whether the defendant committed the crime.

" 'A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given.' *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). 'The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration,

---

[9] The request stated: "A. It is not necessary for the state to prove what reason the defendant had for committing the crimes charged; what motivated him to do it. Recognizing the fact that crimes are generally committed for some motive, evidence of a motive is admissible to prove the guilt of the defendant if it appears that he has a motive.

"B. In that same manner in any case in which there appears no motive on the part of the defendant that fact tends to raise a reasonable doubt as to the guilt of the defendant.

"C. You should endeavor to determine whether it can be reasonably inferred that the defendant had any motive to commit the crimes alleged. If no motive can be inferred or found that *may well tend* to raise a reasonable doubt as to the guilt of the defendant.

"Authority: Wright, Connecticut jury instructions, Vol II § 661d; Borden & Orland, [Conn. Practice, Criminal Jury Instructions,] § 7.1F; *State* v. *Rathbun,* 74 Conn. 524, 51 A. 540 (1902).

"Source: All testimony." (Emphasis added.)

[10] The trial court instructed: "Motive is not an element, is never an element of a crime and the state is not required to prove or to show that the defendant had a motive to commit the crime charged in the particular case."

under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues.' *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978); *State* v. *Harrell,* [199 Conn. 255, 269, 506 A.2d 1041 (1986)]." *State* v. *Watlington,* 216 Conn. 188, 198–99, 579 A.2d 490 (1990).

We have stated that the " 'presence *or absence* of motive . . . is a circumstance to be weighed with other evidence for the jury to consider. . . .' " (Emphasis added.) *State* v. *Ruffin,* 206 Conn. 678, 681, 539 A.2d 144 (1988); *State* v. *Annunziato,* 169 Conn. 517, 530, 363 A.2d 1011 (1975). An instruction on motive and lack of motive is sometimes required because "[e]vidence tending to show the existence or nonexistence of motive often forms an important factor in the inquiry as to the guilt or innocence of the defendant. *State* v. *Rathbun,* 74 Conn. 524, 529, 51 A. 540 (1902)." *State* v. *Harris,* 182 Conn. 220, 224, 438 A.2d 38 (1980). "The role motive plays in any particular case necessarily varies with the strength of the other evidence in the case. 'The other evidence may be such as to justify a conviction without any motive being shown. It may be so weak that without a disclosed motive the guilt of the accused would be clouded by a reasonable doubt.' *State* v. *Rathbun,* supra, 529–30." Id. Therefore, if the evidence warrants it and if an accurate and timely request to charge is made, the trial court must instruct the jury that a lack of evidence on motive may tend to raise a reasonable doubt.

In *State* v. *Annunziato,* supra, 529, the defendant claimed that the trial court improperly failed to instruct the jury that an absence of evidence of motive " 'may well tend to raise a reasonable doubt as to the guilt of the defendant.' " We stated that the instruction was inaccurate because "even a total lack of evidence on motive would not *necessarily tend* to raise a reason-

able doubt so long as other evidence was sufficient to find guilt beyond a reasonable doubt." (Emphasis added.) Id., 530. Upon reconsideration of our decision in *State* v. *Annunziato,* supra, it is evident that the defendant in that case did not request that the jury be informed that a lack of evidence of motive would necessarily tend to raise a reasonable doubt. Rather, the specific language of the defendant's request in that case stated only that a lack of evidence of motive may well tend to raise a reasonable doubt. Moreover, that analysis was superfluous because we concluded, based on the evidence, that it was clear from the jury's verdict that it had found some evidence of motive. To the extent that *Annunziato* held that a request for an instruction stating that a lack of evidence of motive "may well tend" to raise a reasonable doubt is inaccurate, we overrule it.

In this case, the evidence warranted an instruction concerning the possible tendency of an absence of evidence of motive to raise a reasonable doubt, and the defendant made a timely request to charge. The state adduced no evidence of the defendant's motive to kill either Pascoe or Pink.[11] Further, while paragraph B of the defendant's request to charge was not a correct statement of the law, paragraphs A and C were. Paragraph B incorrectly stated that a lack of evidence on motive *does tend* to raise a reasonable doubt. *State* v. *Annunziato,* supra. Paragraph C, however, corrected that misstatement by asserting that lack of motive evidence "may well tend" to raise a reasonable doubt. Although we recognize that the use of the language "may well tend" is inclined to convey to a jury that an absence of motive evidence probably does tend to

---

[11] The state conceded this point to the jury in its closing argument: "You don't know and I don't know why these people had [the desire to kill Pink and Pascoe] . . . . We don't know what the motive was for David Lewis shooting Fitzroy Pink, for Trevor Pinnock trying to shoot Kenneth Pascoe."

raise a reasonable doubt, an instruction consistent with the defendant's requests A and C, while not completely accurate, would have adequately apprised the jury of the law. A better instruction would inform the jury that: (1) motive is not an element of the offense, and the state is not required to prove or show motive; (2) an absence of evidence of motive may tend to raise a reasonable doubt; and (3) even a total lack of evidence of motive would not necessarily raise a reasonable doubt as to the guilt of the defendant so long as there is other evidence produced that is sufficient to prove guilt beyond a reasonable doubt. Because there was no evidence in this case of motive and because the defendant submitted an adequate request to charge, the trial court should have provided the jury with a more balanced instruction on the issue of motive. The instruction that was given was not adequate and did not substantially inform the jury as the defendant requested. Accordingly, the trial court improperly denied the defendant's request to charge on motive.

Although the trial court failed to deliver a proper charge on motive, the defendant is not entitled to a new trial unless the deficiency in the charge was harmful. We conclude that it was not. Because the deficiency in the court's instruction is not constitutional, the defendant has the burden of demonstrating the harmfulness of the court's error. *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1987); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980). To demonstrate harmfulness, the defendant must demonstrate that it is more probable than not that the court's action affected the result of his trial. *State* v. *Payne,* 219 Conn. 93, 103, 591 A.2d 1246 (1991); *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988); *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988).

The defendant concedes that the trial court properly informed the jury that the state does not have the burden of proving motive. He claims the court acted improperly only in that it failed affirmatively to explain that a lack of proof of motive may raise a reasonable doubt. The court never informed the jury that lack of motive was immaterial or could not provide a basis for finding reasonable doubt. Further, in its instruction on reasonable doubt, the court informed the jury that it should consider all of the evidence in the case and that reasonable doubt may be found from a lack of evidence.[12] Moreover, the court instructed the jury that it should not return a verdict of guilty unless it came to a "settled and abiding belief" that the defendant had committed each element of the charged offenses. As instructed, the jury could reasonably have considered the lack of proof of motive as bearing on its decision as to whether the state proved guilt beyond a reasonable doubt. Because the defendant has failed to demonstrate that a proper charge on the absence of motive is likely to have affected the result of his trial, we conclude that the error was harmless.

V

Finally, the defendant claims that he was deprived of his right to due process and his "right to a fair trial

---

[12] The court instructed the jury that "reasonable doubt means a doubt founded upon reason or common sense. As the word implies, it is a doubt held by a reasonable person after all the evidence in the case is carefully analyzed, compared and weighed. *A reasonable doubt may arise not only from the evidence produced but also from the lack of evidence.* Since the burden is upon the state to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged, the defendant has the right to rely upon a failure of the prosecution to establish such proof. Reasonable doubt is the kind of a doubt upon which reasonable people like yourself in the more serious and important affairs in your own lives would hesitate to act. On the other hand, if all the evidence has been impartially and thoroughly reviewed by you, and it produced in your mind a settled and abiding belief that you would be willing to act upon in matters of the highest importance related to your own affairs, then in that event you would be free from a reasonable doubt and should declare the defendant to be guilty." (Emphasis added.)

by an uncoerced jury" when the trial court delivered a "Chip Smith" charge to the jury. The jury began deliberating on August 2, 1990. On August 3, 1990, the trial court received a note from the jury. The court stated: "It says . . . we have come to an agreement on the conspiracy to commit murder charge. What it is I don't know. That's not written here. I said that, but we are 5 to 1 on the attempt to commit murder charge. What shall we do from here on? We would like some advice. That's the jury foreman. I will give them the Chip Smith charge which is exactly appropriate." At that time, the court instructed the jury to continue its deliberations and asked the dissenting juror carefully to consider his position.[13] As a result of that charge, the defendant claims a constitutional violation. We do not agree.

---

[13] The court instructed as follows: "As far as advice, there's an instruction appropriate for this situation described by your note as far as the disagreement on the attempt to commit murder charge. I will read it to you. It is one page so I will read it twice. It is entitled instructions when the jury fails to agree. Although the verdict to which each juror agrees must of course be his or her own conclusion and not a mere acquiescence in the conclusion of the others in order to bring minds to a unanimous result you should in conferring together pay proper respect to each other's opinions and listen with candor to each other's arguments. It is more or less common sense like everything else. If much the larger number of the panel are for a particular verdict a dissenter should consider why his or her own conclusion is one which makes no impression upon the minds of the others who are equally honest and intelligent and who have heard the same evidence with equal desire to arrive at the truth and under the sanction of the same oath. The minority ought seriously to ask themselves whether they may not reasonably doubt the conclusion of the judgment which is not concurred in by most of those with whom they are associated and the weight or sufficiency of that evidence which fails to carry in the minds of their fellows. I am going to ask you to go back to the jury room and discuss this case further.

"I will read that in its entirety again. Let me see if I can do better on that last sentence. It is kind of cumbersome. Although the verdict to which each juror agrees must of course be his or her own conclusion and not a mere acquiescence in the conclusion of the others, in order to bring minds to a unanimous result you should in conferring together pay proper respect to each other's opinions and listen with candor to each other's arguments.

We recognize that a defendant is "entitled to a jury unfettered by an order to decide." *State* v. *Stankowski,* 184 Conn. 121, 147, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *Jenkins* v. *United States,* 380 U.S. 445, 446, 85 S. Ct. 1059, 13 L. Ed. 2d 957 (1965). Within limits, however, a charge designed to overcome a deadlock of jury deliberations is permissible. In our most recent case concerning this issue we stated, "[s]ince *State* v. *Smith,* 49 Conn. 376, 386 (1881), the 'Chip Smith' charge has consistently been upheld by this court." *State* v. *Ryerson,* 201 Conn. 333, 349, 514 A.2d 337 (1986). That statement was based on a long line of precedent upholding different variations of antideadlock charges. *State* v. *O'Neill,* 200 Conn. 268, 281–84, 511 A.2d 321 (1986); *State* v. *Jones,* 193 Conn. 70, 91–92, 475 A.2d 1087 (1984); *State* v. *Avcollie,* 188 Conn. 626, 641–42, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Stankowski,* supra, 145–47; *State* v. *Martinez,* 173 Conn. 541, 378 A.2d 517 (1977); *State* v. *Ralls,* 167 Conn. 408, 425, 356 A.2d 147 (1974); *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184 (1925).

The defendant does not claim that the charge given in this case is distinguishable from that in cases in which

If much the larger number of the panel are for a particular verdict, a dissenter should consider why his own conclusion is one which makes no impression upon the minds of the others who are equally honest and intelligent and who have heard the same evidence with equal desire to arrive at the truth under the same sanction of the same oath. The minority ought seriously to ask themselves whether they may not reasonably doubt the conclusion of their judgment which is not concurred in by most of those with whom they are associated with and distrust the weight or sufficiency of that evidence which fails to carry in the minds of their fellows. In other words, why do they—ask yourself why do you distrust the weight, sufficiency of the evidence which seems to carry weight in the minds of the other people. With that I'm going to ask you to go back to the jury room and discuss this case further."

we have upheld the charge.[14] He asserts, however, that the timing of the charge, the fact that it was delivered twice; see footnote 13, supra; and the fact that the court was aware that there was only one dissenting juror rendered the delivery of the charge in this case especially damaging. These grounds were not raised at trial. At trial, following the trial court's announcement that the "Chip Smith" charge would be delivered, defense counsel stated, "I object on the grounds—I except to the Chip Smith charge." This universal objection did not apprise the trial court of any specific reasons why the instruction should not be given. Accordingly, we do not review the defendant's more specific claims on appeal because to do so would amount to an ambush of the trial court. Practice Book §§ 315, 4185; *State* v. *Sinclair*, 197 Conn. 574, 579, 500 A.2d 539 (1985); *State* v. *Garcia*, 13 Conn. App. 67, 68, 534 A.2d 906 (1987). Had specific objections been made at trial, the court would have had the opportunity to alter the "Chip Smith" instruction or not to give it at all. Because the trial court properly applied our general principle of law that the "Chip Smith" instruction is not erroneous, its ruling was proper.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[14] In *State* v. *Ryerson*, 201 Conn. 333, 514 A.2d 337 (1986), the "Chip Smith" charge delivered to the jury was similar to the one given in this case.