# In re Wayne A. II*
## (9384)

DuPont, C. J., O'Connell and Landau, Js.

Argued February 6—decision released August 20, 1991

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David J. Wenc,* for the appellant (respondent father).

*Linda Pearce Prestley,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (petitioner).

*Maureen A. Chmielecki,* for the minor child.

LANDAU, J. Wayne A. II was born on October 5, 1978, to Rosemarie A. and Wayne A., who has been incarcerated since June, 1979. In July, 1986, Rosemarie A. voluntarily placed the child in the custody of the department of children and youth services (DCYS). In April, 1987, DCYS filed a coterminous petition seeking adjudication of the child as a neglected and uncared for child and further seeking termination of the parental rights of both parents. On July 1, 1988, Rosemarie A. voluntarily consented to termination of her parental rights. The neglect and termination proceeding with regard to the father's parental rights was scheduled for October 18, 1988.

Rather than proceeding to trial on that date, the father entered into a stipulation with DCYS agreeing to voluntarily terminate his parental rights provided (1) that he have the opportunity to correspond with his son by letter, (2) that he have the opportunity to communicate with his son by telephone at least four times a year including his son's birthday, Christmas, Thanksgiving, or any other appropriate holiday, (3) that DCYS would make reasonable efforts to place his son with an adoptive family that would permit written and telephone communication between the father and his son and that DCYS would have the burden of establishing the reasonableness of its efforts at a six month review

before the court and at a twelve month review if DCYS had not previously established the reasonableness of its efforts and that the father would have the opportunity to participate at the review hearing "to exercise [his] rights concerning the efforts of DCYS," (4) that if the adoptive parents initially accept the conditions of this stipulation but subsequently wished to terminate contact, the adoptive parent's decision would be reviewed by the court to provide the father with the opportunity to determine whether the decision was arbitrary, (5) that if the child should desire not to remain in communication with his father, the child's therapist would report his opinion as to the son's desire, and that the father would have the right to request an independent psychiatric or psychological evaluation, (6) that the father's attorney would monitor the child's responsiveness to the written and telephone communications from the father, and (7) that the father would have the opportunity to indicate on the record the reasons why he is consenting to the termination of his parental rights. This stipulation was read into the record with the father counsel for DCYS and counsel for the child orally agreeing to the stipulation as it was read.

After the father stated on the record his reasons for agreeing to terminate his parental rights, the trial court fully apprised him of the implications of termination. The court specifically stated that "you have to understand that the termination of parental rights means that it is a termination and there is no legal right to enforce any agreement with respect to visitation or communication. I have to explain that to you and that will be the affidavit that you receive. That doesn't mean we'll try to void the agreement that was reached here, but we will follow that agreement to the extent that it is possible to comply with it. But you are giving up your rights to your child."

On November 30, 1988, after voluntary consent forms signed by the respondent were reviewed by the court and entered into the record, the court granted the petition for termination of the father's parental rights. The commissioner of DCYS was then appointed as statutory parent for the purpose of placing the child into adoption.[1]

After six months and again after twelve months, DCYS filed reports with the court. Neither party requested a hearing at those times because an adoptive home had not been found for the child. In January, 1990, an adoptive home was found. In April, 1990, DCYS filed a motion to review the permanent plan that the child, who was residing with his adoptive family, would be adopted within one year. On May 8, 1990, the father filed a motion to enforce the stipulation, alleging that DCYS had violated all of the provisions in the stipulation. The father specifically alleged that DCYS refused to provide him with the opportunity to communicate and correspond with his son, never attempted to establish whether it had made reasonable efforts to place the child with an adoptive family who would accept the stipulation, evaded their responsibility to seek judicial review of its efforts, and refused to allow contact between the child and the father's attorney who is the monitor named in the stipulation.

A hearing was held on these motions on May 17, May 24, and June 7, 1990, at which the father was represented by an attorney. The court denied the father's oral motion for a continuance so that he could be physically present at the hearing and provided him with telephone communication during the proceeding.

---

[1] A statutory parent is defined as "the commissioner of children and youth services or that child-placing agency appointed by the court for the purpose of giving a minor child or minor children in adoption . . . ." General Statutes § 17a-93 (f).

On June 7, 1990, the trial court granted the petition of DCYS to review the permanent plan and approved it. The court also denied the father's motion to enforce the stipulation. The court found that DCYS had made reasonable efforts to comply with the requirements of the stipulation and concluded that further review would not be necessary. The court specified that adoption is in the best interests of the child and should proceed without further court intervention. The court, therefore, concluded that the father would have to address his inquiries regarding communication with his son extrajudicially to DCYS.

The father claims that the court incorrectly (1) denied his request that he be present at the hearing and thereby denied him his right to due process, (2) denied his request to call two additional DCYS employees as witnesses and thereby denied him his right to due process, and (3) found that the requirement of "reasonable efforts" in the stipulation dated October 18, 1988, had been established by DCYS. We conclude that the actions of the trial court were proper.

In his first two claims, the father asserts that the trial court denied him his right to due process and his right to participate in the hearing on his motion to enforce the stipulation and on the motion of DCYS to review the plan for the child. The father bases his claims on General Statutes § 46b-135 (b) and *In re Juvenile Appeal (Docket No. 10155),* 187 Conn. 431, 435, 446 A.2d 808 (1982), which addressed a parent's rights in termination proceedings, and the adoption in that case of the balancing test articulated in *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The present case, however, does not concern a hearing to terminate parental rights.

A trial court may grant a petition to terminate parental rights if a parent consents to the termination know-

ingly and voluntarily. General Statutes § 17a-112 (b); *In re Rayna M.,* 13 Conn. App. 23, 38–39, 534 A.2d 897 (1987). A review of the record indicates that the father had voluntarily and knowingly consented to the termination of his parental rights when he executed the voluntary consent form in 1988, that he understood that the termination of parental rights is part of the adoption process and that the state would be seeking to permanently place his son. See *In re Theresa S.,* 196 Conn. 18, 30, 491 A.2d 355 (1985). This review also indicates, however, that the father terminated his rights anticipating that, subject to the terms of the stipulation, he would have the opportunity to remain in contact with his son even after the child had been adopted.

The father first claims that the trial court's denial of his motion to be physically present during the proceeding constitutes a denial of due process and an abuse of discretion. In *In re Juvenile Appeal (Docket No. 10155),* supra, 437, our Supreme Court concluded that a father who was not physically present during a hearing to terminate his parental rights but was provided with a telephone hookup was not deprived of his due process rights. See also *In re Jonathan P.,* 23 Conn. App. 207, 212–13, 579 A.2d 587 (1990). Therefore, in this case, the father's due process rights, after his parental rights had been terminated, were fully protected because of his telephone connection during the proceeding. The telephone hookup allowed him to participate in the proceeding and the court's denial of his motion for a continuance so that he could be physically present does not constitute an abuse of discretion.

The father next claims that the court violated General Statutes § 46b-135 (b), which provides a parent in a juvenile proceeding the rights of confrontation and cross-examination, by not allowing him to call two additional DCYS employees as witnesses, thereby violat-

ing his rights to due process and participation in the review proceeding. General Statutes § 46b-135 (b) is not applicable. It was within the trial court's discretion to deny the father's request to call additional DCYS employees as witnesses on the basis of relevance or cumulative evidence. *State* v. *Ruffin,* 206 Conn. 678, 683, 539 A.2d 144 (1988); *State* v. *Watley,* 195 Conn. 485, 490, 488 A.2d 1245 (1985); *State* v. *Gooch,* 186 Conn. 17, 24, 438 A.2d 867 (1982). We find no abuse of discretion.

The father's third claim is that the trial court's finding that DCYS had made reasonable efforts to place the child with an adoptive family that would accept the terms of the stipulation is clearly erroneous. Specifically, the father challenges the factual basis of the court's decision. We conclude that the basis for finding is sound. The father further alleges that he was prejudiced because the court did not review the efforts of DCYS after six months and after twelve months. The court, in rendering its decision, noted the review periods stated in the stipulation. It found, however, that, due to the difficulty in placing the child, any failure to address the conditions of the stipulation at the prior review hearings did not result in prejudice because those same issues are fully addressed in the present proceeding. Our review of the record reveals that the facts set out in the court's decision are supported by the evidence. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The judgment is affirmed.

In this opinion the other judges concurred.