# IN RE JESSICA M.*
## (AC 16478)

Landau, Spear and Hennessy, Js.

Argued September 16, 1997—officially released June 30, 1998

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book (1998 Rev.) § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Linda Pearce Prestley*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (petitioner).

*David Brian Carr*, for the appellee (respondent mother).

*Eric Onore*, for the appellee (respondent father).

*Opinion*

LANDAU, J. The petitioner, the commissioner of the department of children and families (department), appeals from the judgment of the trial court dismissing the petition to terminate the parental rights of the respondent parents pursuant to General Statutes (Rev. to 1995) § 17a-112 (b),[1] titled "Termination of parental rights of child committed to commissioner."

---

[1] General Statutes (Rev. to 1995) § 17a-112 (b) provides: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental

The department appealed from the dismissal of the petition, claiming that the trial court improperly found that the department had failed to prove, by clear and convincing evidence, sufficient grounds for an adjudication of termination of parental rights, specifically, failure to achieve rehabilitation and acts of commission and omission, and that it was not in the best interest of the child to terminate parental rights pursuant to § 17a-112 (b). After a review of the record and briefs, and after hearing from the parties at oral argument, we conclude that the trial court properly dismissed the petition to terminate the rights of Jessica's parents.

The following facts are relevant to this appeal. Jessica was born on October 29, 1990. One month later, Jessica's pediatrician notified the department that Jessica had suffered injuries to her head and that her parents' explanation was not consistent with the injury, a fractured skull with a small amount of brain swelling. Jessica's mother later admitted having hit the child with her hand. Jessica's father knew of the incident. In December, 1990, the department obtained temporary custody of Jessica and filed coterminous petitions of neglect and termination of parental rights as to Jessica's parents.

On March 15, 1991, the department withdrew the termination petition, and Jessica was adjudicated neglected and committed into department custody and placed in foster care. Jessica was returned to her parents in October, 1991. From that time until the summer

commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."

The statute is now General Statutes § 17a-112 (c).

of 1992, the department provided protective services for Jessica in her family home. On June 5, 1992, the department petitioned to revoke Jessica's commitment.[2] The department closed its file on Jessica because its expectations concerning her parents were successfully met.

Three and one-half years later, Jessica came to the attention of the department again. In March, 1995, the mother took Jessica and left the marital home. The mother sought help at a battered women's shelter, where she reported spousal abuse and that she had hit Jessica in the head again. She also reported that the father had beaten Jessica with a belt. The coordinator of the shelter reported suspected child abuse to the department. Upon investigation, a department employee noted bruises on Jessica's back, buttocks and legs. The department again obtained custody of Jessica, placed her in foster care, and once more filed coterminous petitions of neglect and termination of parental rights.[3]

---

[2] In its articulation, the trial court quoted from the department's summary of reasons given to revoke commitment. "Jessica was returned to her parents' care in October, 1991, after they had demonstrated, over a period of time, a willingness and commitment to participating in services which enhanced their parenting skills and involved individual and family counseling. Their ability to care for Jessica in a safe and loving way became noticeably greater during this period, and they showed a high degree of personal stability.

"Since Jessica has been home, she has been cared for in a safe and conscientious manner by both Mr. and Mrs. M. She is a happy, healthy and active child who obviously is closely bonded to her parents, and she is very comfortable in their presence. The Ms have demonstrated their ability to provide day-to-day care for Jessica and to recognize her needs. They have continued to be cooperative with [the department] and other community service providers, have maintained a stable household and clearly love their daughter."

[3] The concurrence asserts that "[f]ailure to achieve rehabilitation should not be considered as a ground for termination in a coterminous proceeding because there is no 'prior proceeding' to mark the beginning of the period in which the parent must achieve rehabilitation." The concurrence argues that the phrase "prior proceeding"; see § 17a-112 (b) (2); refers to the determination of neglect that immediately precedes the filing of the termination petition. We acknowledge that the phrase "prior proceeding" may mean

At the time of trial, Jessica was living with a foster family, and her parents were separated. Trial was held on several days between September 29, 1995, and April 22, 1996. The trial court heard testimony from Jessica's foster mothers, from the respondents and from other relatives, department caseworkers and two psychologists, whose reports were also admitted as evidence.[4] The trial court also took judicial notice of the court files of both the 1990 and 1995 proceedings.

The trial court first considered the neglect petition and then considered whether either of the two statutory grounds alleged in the termination petition were proved by clear and convincing evidence. The trial court found by a fair preponderance of the evidence that Jessica was neglected for injuries the parents inflicted on her in March, 1995. The court ordered Jessica committed to the department for one year.

With respect to the termination petition, the court took judicial notice of the 1990 file and found that, as

that the neglect proceeding must form the predicate facts on which the termination petition is based. We also acknowledge that the phrase may mean that there must be an adjudication of neglect *at any time* prior to the termination petition. Nevertheless, we decline to review this issue as it was not raised by the parties.

"[T]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. This court follows the [long-standing] rule that absent certain exceptional circumstances . . . claims not distinctly raised at trial will not be reviewed on appeal. *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991)." (Internal quotation marks omitted.) *In re Michael A.*, 47 Conn. App. 105, 110, 703 A.2d 1146 (1997). "Reversal for plain error is generally reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Jones*, 29 Conn. App. 304, 317, 615 A.2d 149 (1992) (*Norcott, J.,* dissenting in part, concurring in the result only). As we have previously stated, the phrase "prior proceeding" can be read two ways. Therefore, the trial court may not have erred at all. As a result, it certainly cannot be said that the trial court's reading was an obvious error.

[4] Other witnesses included the coordinator of the battered women's shelter and a police officer.

part of that proceeding, Jessica had been adjudicated neglected. See General Statutes (Rev. to 1995) § 17a-112 (b) (2). The trial court also found with respect to the 1995 proceeding that the department had not made reasonable efforts to reunite the family for a period of not less than one year. See General Statutes (Rev. to 1995) § 17a-112 (b), (c) and (d) (2).[5] The trial court stated that because the parents had successfully achieved rehabilitation in the past, they would again benefit from the intensive services of the department. The court dismissed the termination petition on both grounds alleged, i.e., failure to achieve rehabilitation and parental acts of omission and commission. The trial court also ordered the department to provide the parents with intensive rehabilitation services and additional supervised visitation. See Practice Book § 1046.1, now Practice Book (Rev. 1998) § 33-12.[6]

The department raises four issues on appeal: the trial court improperly (1) relied on dispositional evidence for adjudication, (2) concluded that the parents would benefit from rehabilitative services, (3) found that the allegations were not proven by clear and convincing

---

[5] General Statutes (Rev. to 1995) § 17a-112 (b) requires that the grounds for termination exist "with respect to any nonconsenting parent, over an extended period of time, which, except as provided by subsection (c) of this section shall not be less than one year . . . ." Subsection (c) provides in relevant part: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child. . . ." Subsection (d) provides in relevant part: "[T]he court shall consider and shall make written findings regarding . . . (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended . . . ."

[6] Practice Book § 1046.1, now Practice Book (1998 Rev.) § 33-12, provides in relevant part: "If the judicial authority determines that termination grounds do not exist . . . then the judicial authority may consider any of the dispositional alternatives available under the neglect . . . petition by a fair preponderance of the evidence."

evidence, and (4) concluded that termination of parental rights was not in the best interest of the child.[7]

" 'Termination of parental rights' means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents . . . ." General Statutes § 45a-707 (8). "Termination of parental rights is 'a most serious and sensitive judicial action.' " *In re Barbara J.*, 215 Conn 31, 44, 574 A.2d 203 (1990). "Since termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in an everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well, courts must require strict adherence to the statutory standards." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).

On appeal, "[w]e will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record." *In re Romance M.*, 229 Conn. 345, 353, 641 A.2d 378 (1994). "[G]reat weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *Rummel* v. *Rummel*, 33 Conn. App. 214, 221, 635 A.2d 295 (1993). " 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' " *In re David E.*, 4 Conn. App. 653, 656, 496 A.2d 229 (1985). "[O]n review by this court every reasonable presumption is made in favor of the trial

---

[7] Because we hold that the trial court properly reviewed the evidence and concluded that the parents would benefit from rehabilitative services and that the department did not prove the allegations by clear and convincing evidence, we need not reach the issue of the best interest of the child.

court's ruling." (Internal quotation marks omitted.) *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). Our review of the complete record reveals the trial court's decision was factually supported and legally correct.

I

The department first claims that the trial court improperly considered dispositional evidence during the adjudicatory phase of the termination proceedings. This claim lacks merit.

A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). "In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." Id. "In the discretion of the court, evidence on adjudication and disposition may be heard in a nonbifurcated hearing, provided disposition may not be considered until the adjudicatory phase has concluded." Practice Book § 1042.1 (4), now Practice Book (1998 Rev.) § 33-3 (b); see also *In re Jose C.*, 11 Conn. App. 507, 508–509, 527 A.2d 1239 (1987).

In this case, the trial court properly conducted a nonbifurcated trial and rendered a decision on the adjudicatory phase of the termination proceeding. The trial court wrote two memoranda of decision, one dismissing the petition and one in response to the department's motion for articulation, which indicate that the court's adjudicatory decisions were based on events that took place prior to the department's March, 1995 petition to terminate the rights of Jessica's parents. Specifically,

the trial court found that the department did not prove nor did it request the trial court to waive the requirement that it made reasonable efforts to reunite the family for a period of not less than one year. The department's ability to rehabilitate the parents following Jessica's commitment in 1991 also militated against termination of their parental rights in 1996. The trial court stated in response to the motion for articulation: "If their past behavior is the best predictor of the parents' future behavior, these parents would find intensive rehabilitative services as [the department] provided them in 1991 beneficial to rehabilitation now." The parents' prior successful rehabilitation and the mutual love and bonds between Jessica and her parents are the basis on which the trial court dismissed the termination petition. Those facts occurred and were documented prior to March 29, 1995, and were properly considered by the trial court.

The department cites two sets of facts as the basis of its claim on appeal. The first concerns the department's having provided the mother with individual therapy and supervised visitation, which occurred after the 1995 termination petition was filed. The court found the mother to be in compliance with the therapy and visitation requirements. The trial court is required "to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. There may be instances in which the evidence does not establish that parental rights should be terminated under this section, despite the fact that continuing support programs for the parent may be suitable or even necessary. . . . Moreover, the court must also consider the six factors listed in General Statutes [Rev. to 1995 § 17a-112 (d)] when determining whether a parent has failed to rehabilitate himself or herself." (Citation omitted; internal quotation marks omitted.) *In re Sarah M.*, 19 Conn. App. 371, 376–77, 562 A.2d 566 (1989).

General Statutes (Rev. to 1995) § 17a-112 (d) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended . . . (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future . . . ." The mother's compliance with the therapy and visitation requirements *initiated by the department*[8] is in keeping with the mandate of the statute and supports the trial court's order that the department provide the parents with intensive rehabilitative services and supervised visitation for one year.

The second set of facts at issue concern the father. At trial, the father testified as to his employment and living arrangements. In its memoranda, the trial court wrote that "he is presently separated from his wife and living with his mother." The department takes exception to the phrase "is presently." Our review of the father's testimony discloses that the status of his employment, marriage and residence preexisted the department's filing of the termination petition and continued until the time of trial. The trial court's memoranda of decision merely state the status quo. These facts, too, were found pursuant to § 17a-112 (d) and further support the trial court's order for continued intensive rehabilitative services. Thus, the trial court

---

[8] We note the contradiction in the department's having provided the mother with rehabilitative services and supervised visitation at the time of its filing the termination petition.

did not improperly consider dispositional evidence during the termination proceedings.

## II

The department's second claim is that the trial court improperly concluded that Jessica's parents would benefit from rehabilitative services. We disagree.

The department's petition to terminate was partially based on § 17a-112 (b) (2), which provides in relevant part that "the parent . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that *within a reasonable time, considering the age and needs of the child,* such parent could *assume a responsible position in the life of the child* . . . ." (Emphasis added.) We cannot say that the facts found are clearly erroneous in light of the evidence in the whole record.

This court previously addressed the standard of "personal rehabilitation" in the case of *In re Migdalia M.,* supra, 6 Conn. App. 194, which is instructive here. Migdalia was a child with severe medical problems. Her parents could not provide the child with the care needed to treat her medical problems. Migdalia was found to be neglected, and was committed to the department and placed in foster care. Migdalia's parents loved her and visited with her regularly. This court examined the statutory requirements of "personal rehabilitation" and reversed the trial court's judgment terminating parental rights for failure to achieve rehabilitation.

" 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." Id., 203. The statute does not "define the degree of personal rehabilitation required or the meaning of a 'responsible position in the life of the child.' " Id., 206. The statute also does

not require parents to "be able to assume full responsibility for [a] child, unaided by available support systems." *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). The fact that both parents still need counseling does not mean they have not sufficiently achieved rehabilitation. See *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989).

As did Migdalia's parents, Jessica's parents have intellectual and psychological limitations that prohibit them from successfully parenting her without support. The trial court found that Jessica was bonded to her parents and that they love her. Therefore, to the extent the parents can demonstrate to Jessica that they care about and love her, they have a responsible position in her life.

The trial court's factual findings and legal conclusions are supported by the record. Because the parents had achieved rehabilitation in the past,[9] the trial court found that they deserved a second chance and ordered the department to provide rehabilitative services for one year, which is a reasonable time. The department failed to prove, by clear and convincing evidence, that parental rights should be terminated for failure to achieve rehabilitation.

## III

The department also claims that the trial court improperly dismissed its petition to terminate the parental rights of Jessica's parents on the ground of acts of commission and omission pursuant to § 17a-112

---

[9] The facts support the trial court's conclusion. The fact that the mother removed herself and Jessica from the marital home and reported the injuries to the child demonstrates her awareness of the problems and her need for help, which is a responsible position for a parent to take. In essence, the department's filing a petition to terminate parental rights seeks to punish the mother for seeking help and entering counseling. We cannot condone such action on the part of the department.

(b) (3), finding that the department failed to meet its burden of proof by clear and convincing evidence. This claim also lacks merit.

General Statutes (Rev. to 1995) § 17a-112 (b) (3) provides, "the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ." Under this subdivision, parental rights can be terminated for one or numerous acts or omissions that affect a child's well-being. The department's petition focuses on the physical injuries Jessica suffered.

As we construe the statute, where the termination is based on a claim of serious physical injury, two criteria must be met to establish prima facie evidence for termination of parental rights: the physical injury must be serious *and* it must be nonaccidental *or* inadequately explained. The trial court found that in March, 1995, Jessica had bruises on her back, legs and buttocks most probably caused by her father's beating her with a belt. Jessica's mother struck the child's head. The injuries were nonaccidental because her parents intended to strike her. Because X rays and a computerized axial tomography (CAT) scan taken at the time did not reveal any broken bones, the trial court did not find Jessica's injuries to be serious enough to warrant termination of parental rights for acts of parental commission or omission. The trial court also noted that Jessica suffered developmental delays and psychological trauma as a result of her injuries.

Although certain terms and words are defined in the child welfare act,[10] "serious physical injury" is not

---

[10] See 42 U.S.C. § 619.

defined. "Under our rules of statutory construction, we are guided by the words of the statute itself, the legislative history and circumstances surrounding its enactment, the legislative policy the statute was designed to implement, and its relationship to existing legislation and common-law principles governing the same subject matter. *State* v. *Ledbetter*, 240 Conn. 317, 327–28, 692 A.2d 713 (1997)." *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 375, 696 A.2d 326 (1997). "[T]here is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law. *Citrano* v. *Berkshire Mutual Ins. Co.*, 171 Conn. 248, 255, 368 A.2d 54 (1976)." (Internal quotation marks omitted.) *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 8, 680 A.2d 964 (1996). Therefore, we look to existing legislation on the same subject matter.

"The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect . . . ." General Statutes § 17a-101 (a); *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 283, 455 A.2d 1313 (1983). A child is " 'neglected' who . . . (B) is being denied proper care and attention, physically . . . or (C) is being permitted to live under conditions, circumstances or associations injurious to his well-being or (D) has been abused . . . ." General Statutes § 46b-120 (8). " '[A]bused' means that a child or youth (A) has had physical injury or injuries inflicted upon him other than by accidental means, or (B) has injuries which are at variance with the history given of them, or (C) is in a condition which is the result of maltreatment such as, but not limited to . . . cruel punishment . . . ." General Statutes § 46b-120 (3).

We note that the statutes defining neglect and abuse use only the words *physical injury* or *injuries* not *serious* physical injury. This does not present a problem. "While that standard itself does not have a precise

meaning, it does not lack metes and bounds. Our case law has defined and circumscribed that standard over the years . . . in child neglect cases." *State* v. *Anonymous*, 179 Conn. 155, 165, 425 A.2d 939 (1979).

The trial court concluded that Jessica's injuries were not so serious as to warrant termination of her parents' parental rights. The trial court's decision is consistent with decisions of our Supreme Court and this court in interpreting § 17a-112 (b) and the comparable General Statutes (Rev. to 1995) § 45a-717,[11] titled "Termination of parental rights. Conduct of hearing. Investigation and report. Grounds for termination," which controls in the Probate Court. See *In re Valerie D.*, 223 Conn. 492, 510, 613 A.2d 748 (1992) (mother's use of cocaine prior to delivery causing baby to be drug addicted not serious physical injury as is injecting cocaine into child's bloodstream immediately after birth); *In re Theresa S.*, 196 Conn. 18, 19–20, 491 A. 2d 355 (1985) (severing arteries with knife serious physical injury); *In re Juvenile Appeal (84-AB)*, 192 Conn. 254, 255–56, 471 A.2d 1380 (1984) (series of unexplained injuries resulting in bleeding mouth at six weeks old, multiple facial bruises at ten weeks old, ten fractures in different parts of body at four months old serious physical injuries); *In re Sean H.*, 24 Conn. App. 135, 137–38, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991) (serious emotional injury requiring hospitalization sufficient to terminate parental rights).

The trial court's decision is also consistent with the opinions rendered by the courts of several of our sister

---

[11] General Statutes (Rev. to 1995) § 45a-717 (f) (2) provides: "[T]he child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained *serious physical injury* to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ." (Emphasis added.)

states on the question of serious physical injury in the context of child abuse and neglect. See *In re Ethan H.*, 135 N.H. 681, 609 A.2d 1222 (1992) (bruises on buttock caused by spanking with belt not threat to child's life, health or welfare); *Matter of C. Children*, 183 App. Div. 2d 767, 583 N.Y.S.2d 499 (1992) (repeated beatings about face and eye with belt buckle created substantial risk of serious injury); *D.P.* v. *Commonwealth Dept. of Public Welfare*, 104 Pa. Commw. 642, 523 A.2d 408 (1987) (multiple lacerations on back, side, leg and face caused by beating with extension cord serious physical injuries); *Appeal of E.S.*, 82 Pa. Commw. 168, 474 A.2d 432 (1984) (one slightly raised welt on child's back caused by one hit with belt not serious physical injury).

In light of the evidence before the trial court concerning the injuries Jessica suffered in March, 1995, we cannot say, as a matter of law, that the trial court improperly found that her injuries were not serious or that the department did not prove, by clear and convincing evidence, that the parents' parental rights should be terminated due to acts of commission or omission that denied Jessica "the care, guidance or control necessary for [her] physical, educational, moral or emotional well-being."[12]

The judgment is affirmed.

In this opinion SPEAR, J., concurred.

HENNESSY, J., concurring. I concur in the result reached by the majority but write separately to address concerns I have about the interpretation of General Statutes (Rev. to 1995) § 17a-112 as set forth in the majority opinion.

---

[12] Because the trial court determined that no statutory ground for termination of the respondents' parental rights existed by clear and convincing evidence, we need not reach the department's final claim concerning the best interest of the child. See *In re Tabitha P.*, supra, 39 Conn. App. 360.

Initially, it is important to note that there are two ways in which the department of children and families (department) may petition for the termination of parental rights in accordance with § 17a-112: (1) by filing coterminous petitions or (2) by filing a petition for termination of the parental rights in a child presently committed to the department. These methods are set forth in the statutes and rules of practice as well as on the form that the department files when it initiates a coterminous proceeding.[1]

In this appeal, the petitions praying for the termination of parental rights were filed as coterminous petitions as authorized by General Statutes (Rev. to 1995) § 17a-112 (e).[2] The filing of coterminous petitions requires that one petition allege that the child is neglected, and that the accompanying petition request, if neglect is found, that the parental rights in the child be terminated. In order to be a coterminous proceeding, these petitions must be filed simultaneously or in close proximity in time. The other manner of petitioning for the termination of parental rights under § 17a-112 (b)

---

[1] The form for the termination of parental rights is created pursuant to the authority under General Statutes §§ 17a-112, 45a-715 and 45a-717. The portion of the form that invokes the jurisdiction of the trial court so that it may consider the termination petition states:

"Jurisdiction based on:

___ Child committed to the custody of the Commissioner of the Department of Children and Youth Services. (Gen. Stat. 17a-112)

___ Neglect Petition accompanied by Petition for Termination of Parental Rights (*Coterminous Petitions*). (Gen. Stat. 17a-112)."

[2] General Statutes (Rev. 1995) § 17a-112 (e), now § 17a-112 (f), provides: "Any petition brought by the commissioner of children and families to the superior court, pursuant to subsection (a) of section 46b-129, may be accompanied by . . . a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and families. . . . The superior court, after hearing, in accordance with the provisions of subsection (b) of this section, may, in lieu of granting the petition filed pursuant to section 46b-129, grant the petition for termination of parental rights as provided in section 45a-717."

is to request the termination of parental rights in a child who is currently committed to the department as a result of a previous adjudication of neglect.

The following facts must be emphasized. On March 10, 1995, an order of temporary custody was granted by the trial court, *Keller, J.* The accompanying neglect petition alleged that Jessica M. was neglected because "on 3/9/95, the Department of Children and Families received a referral from a battered Women's Shelter. Referral stated that mother came to the shelter the day before because of spousal abuse. Child Jessica, age four years, had bruises on back, buttocks, hip and back of legs. Mother told caller she had fractured the child's skull previously and she was placed in the department's care. Caller further reported that mother disclosed hitting the child on the head on Monday."

On March 29, 1995, the department alleged that the respondents' parental rights should be terminated because (1) Jessica had been found in a prior proceeding to be neglected and her parents had failed to achieve such degree of personal rehabilitation or, in the alternative, (2) Jessica had been denied by an act of commission or omission the care, guidance or control necessary for her physical and emotional well-being.[3]

In the present case, the child was not committed to the department as a neglected child when the petitions were filed. Jessica was in the care of the department by way of an order for temporary custody, the request for which was filed simultaneously with the petition alleging

[3] The petition alleges that the reasons for termination have existed for "not less than one year." The facts included in the record, which were before the trial court, fail to support the conclusion that the conditions leading up to the filing of the neglect petition had existed for more than one year. This issue was not raised by either party and, therefore, for purposes of this discussion, I will limit my remarks to the facts of this case, specifically that the termination petition was based on the facts as found by the department on March 10, 1995.

neglect. The neglect petition alleged that the child was neglected because she was permitted to live under conditions, circumstances or associations injurious to her well-being and, as a result, was being denied proper care and attention, both physically and emotionally. The trial court found the child neglected, by a fair preponderance of evidence, as a result of injuries inflicted on her on March 9, 1995, by her parents. Thereafter, in its written decision, the trial court proceeded to commit the child to the department for a period of one year.

Under the statutory scheme, the commitment of Jessica for one year would deprive the trial court of jurisdiction to render any further disposition regarding the termination of parental rights. Section § 17a-112 (e) authorizes the Superior Court *in lieu of* granting the neglect petition and committing the child to the custody of the department, to grant the petition for termination.[4] Despite this, the trial court considered the petition to terminate parental rights. We must assume that the commitment of Jessica by the court was in anticipation and a rejection of the request for termination of parental rights and, therefore, that the trial court properly considered both grounds alleged by the department.

The first ground for termination considered by the court was failure to achieve rehabilitation. For a court to order termination on that ground pursuant to § 17a-112 (b) (2), the child must have been found to be

---

[4] Practice Book (1998 Rev.) § 33-12, formerly § 1046.1, sets forth the procedures as follows: "When coterminous petitions are filed, the judicial authority first determines whether the child is neglected, uncared for or dependent by a fair preponderance of the evidence; if so, then the judicial authority determines whether statutory grounds exist to terminate parental rights by clear and convincing evidence; if so, then the judicial authority determines whether termination is in the best interest of the child by clear and convincing evidence. If the judicial authority determines that termination grounds do not exist or that termination is not in the best interest of the child, then the judicial authority may consider any of the dispositional alternatives available under the neglect, uncared for or dependent petition by a fair preponderance of the evidence."

neglected in a prior proceeding and the parents must have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child.

The majority assumes that the requirement that the child must have been found neglected in a prior proceeding means that the child was found neglected any time in the past. Common sense and case law suggest that the phrase "in a prior proceeding" means the proceeding that immediately precedes and results in the filing of the petition to terminate parental rights. See footnote 6.

Failure to achieve rehabilitation should not be considered as a ground for termination in a coterminous proceeding because there is no "prior proceeding" to mark the beginning of the period in which the parent must achieve rehabilitation. General Statutes (Rev. to 1995) § 17a-112 (b) provides that the parental rights of a nonconsenting parent may be terminated if after "*an extended period of time* . . . (2) the parent of a child who has been found by the superior court to have been neglected or uncared for *in a prior proceeding* has failed to achieve such degree of personal rehabilitation . . . ." (Emphasis added.) Failure to rehabilitate is defined as the failure of a parent to achieve expectations following the adjudication and disposition of the prior neglect petition. See *In re Michael M.*, 29 Conn. App. 112, 125–26, 614 A.2d 832 (1992); *In re Migdalia M.*, 6 Conn. App. 194, 206, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).

The grounds for termination set forth in subsection (b) must be alleged after an "extended period of time"

unless subsection (c)[5] has been satisfied. A plain reading of the statute reveals that the phrase "prior proceeding" refers to the determination of neglect that immediately precedes the filing of the termination petition. "In practice, a parent's rehabilitation is often measured against the expectations established by the court following adjudication and disposition of the prior neglect petition." P. Chill, The Law of Child Abuse and Neglect in Connecticut (1997), p. 147. In a coterminous proceeding, there is no period of time to observe the parents and determine if they have or have not achieved expectations following the adjudication of the neglect petition.

"It is well settled that a statute must be applied as its words direct. . . . *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 194, 567 A.2d 1156 (1989)." (Internal quotation marks omitted.) *Pascarelli* v. *Moliterno Stone Sales, Inc.*, 44 Conn. App. 397, 400, 689 A.2d 1132, cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997). Statutes should be given their plain meaning. In a coterminous proceeding an insufficient amount of time passes in which to evaluate the parents' attempt to achieve rehabilitation and, therefore, I conclude that the ground of failure to achieve rehabilitation is inapplicable.

A search of the case law of our state did not uncover any termination of parental rights judgment in which coterminous petitions were granted on the ground of failure to achieve rehabilitation.[6] Failure to achieve

---

[5] General Statutes (Rev. to 1995) § 17a-112 (c) provides that "[t]he court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child. . . ."

[6] See, e.g., *In re Baby Girl B.*, 224 Conn. 263, 618 A.2d 1 (1992) (coterminous petition alleging abandonment); *In re Valerie D.*, 223 Conn. 492, 613 A.2d 748 (1992) (coterminous petition alleging abuse); *In re Felicia D.*, 35 Conn. App. 490, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253

rehabilitation, by its very terms, suggests that there are problems affecting the child that have been identified and that over a period of time have not been corrected so as to restore the parent to his or her *prior* constructive and useful role as a parent. Stating it simply, the statutory scheme requires that the occurrence of events or pattern of behavior that bring about state intervention be followed by a period of corrective action. If the parent fails in this endeavor, the failure is ground for the permanent removal of the child from the parent.

In the present case, if the department was successful in its goal to terminate parental rights on the basis of failure to achieve rehabilitation, the respondents would have been denied the opportunity to achieve rehabilitation provided by statute. When coterminous petitions are filed, the department is requesting that the court

(1994) (termination petition filed after continuous supervision of child over period of five years, Appellate Court construed petition as coterminous); *In re Romance M.*, 30 Conn. App. 839, 622 A.2d 1047 (1993), appeal dismissed, 229 Conn. 345, 641 A.2d 378 (1994) (no indication of whether trial court waived one year requirement); *In re Wayne A.*, 25 Conn. App. 536, 595 A.2d 373 (1991) (coterminous petition alleging consent); *In re Emmanuel M.*, 43 Conn. Sup. 108, 648 A.2d 904 (1993) (coterminous petition alleging act of omission or commission and that there was no ongoing relationship); *In re Raymond W.*, Superior Court, judicial district of Windham, Juvenile Matters at Willimantic (October 22, 1990) ("[o]n September 17, 1990, the day of trial, [the department] orally moved to delete the ground of failure to rehabilitate, indicating that it was inapplicable to a coterminous petition and that it had been alleged in error"). *In re Ammy F.*, Superior Court, judicial district of New London, Juvenile Matters at Montville (October 6, 1994), in facts almost identical to those in this case, the trial court stated: "In the instant case, there has been no neglect adjudication in a prior proceeding. Here, [the department] filed a separate neglect petition and termination petition for Ammy and then requested the court to proceed as on a coterminous petition . . . . In fact, there has been no neglect adjudication until this court reached that determination earlier in this memorandum of decision." In footnote 3, the trial court stated that the adjudication of Ammy as neglected on January 14, 1988, could not qualify as the "prior proceeding" and therefore had no bearing on the neglect petition before the court because it had been previously disposed of. Therefore, failure to achieve rehabilitation could not qualify as a ground for termination. Id.

waive any time constraints so that the parental rights can be terminated without taking action to reunite parent and child. To allow failure to achieve rehabilitation to be relied on in a coterminous situation would not allow sufficient time to pass between the finding of neglect and the termination of parental rights so that the court could make a reasonable determination of the parent's success or failure at attempted rehabilitation.[7]

The prior proceeding on which the department relied to invoke the jurisdiction of the trial court was the finding of neglect four years earlier, that proceeding having resulted in a six month commitment to the department. It is undisputed that during the three and one-half years since that commitment ended, there has been no state involvement with this family and no complaints made to the department. If the requirement of being found neglected in a prior proceeding is not tied to the petition to terminate parental rights when considering failure to achieve rehabilitation, the parents will be denied the statutory opportunity to achieve rehabilitation. Further, after neglect has been found upon the occurrence of an event requiring state intervention, the state's filing of coterminous petitions and the event that brought about the finding of neglect years before can be used as evidence of failure to achieve rehabilitation. This does not make sense nor does it comport with the statutory scheme in that it ignores the meaning of rehabilitation.

---

[7] This interpretation is borne out by a recent amendment to General Statutes § 17a-112, No. 96-246, § 18, of the 1996 Public Acts, effective October 1, 1996, which provides that if a parent "of a child, under the age of seven years who is neglected or uncared for, has failed, *is unable or is unwilling to achieve such degree of personal rehabilitation*" their rights may be terminated. The use of the phrase "is unable or is unwilling to" indicates that the parent will fail in the future, not that the parent has failed based on past actions. "This ground essentially allows the court to apply the existing ground of failure to rehabilitate, in certain circumstances, to parents *without affording them any opportunity for rehabilitation.*" (Emphasis added.) P. Chill, supra, § 24 (E), p. 155.

For these reasons, I would exclude the ground of failure to achieve rehabilitation from § 17a-112 (b) (2) as far as it applies to the filing of coterminous petitions. I agree with the majority in upholding the judgment of the trial court that the petitioner failed to prove by clear and convincing evidence that Jessica had been denied by an act of omission or commission the care, guidance or control necessary for her physical and emotional well-being.