MEMORANDUM OF DECISION
On April 16, 1999, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Reid D. and Heidi H. to their minor son, Michael H. For the reasons stated below, the court now dismisses the termination petition with regard to Heidi and grants the petition with regard to Reid.
PROCEDURAL BACKGROUND
Michael H. was born on December 29, 1997. On December 31, 1997, DCF filed a petition for neglect and for temporary custody. The order of temporary custody was granted by the court.
On November 20, 1998, the court found that Michael was neglected and committed him to the Department of Children and Families for a period not to exceed 12 months. On November 9, 1999, this court granted an extension of commitment through January 30, 2000.
On April 16, 1999, DCF filed a termination of parental rights petition. The petition alleged that the child has been found in a prior proceeding to have been neglected and the mother and father have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child. Conn. Gen. Stat.
§ 17a-112 (c)(3)(B). With regard to Reid, the petitioner also alleged that the child has been abandoned by the father in the sense that he has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. Conn. Gen. Stat. § 17a-112 (c)(3)(A). Petitioner also alleged that there is no ongoing parent-child relationship that CT Page 15616 ordinarily develops as a result of the parent having met on a continuing, day-to-day basis, the physical, emotional, moral or educational needs of the child and to allow further time for the establishment of the parent-child relationship would be detrimental to the best interests of the child. Conn. Gen. Stat.
§ 17a-112 (c)(3)(D).
The court heard testimony over a period of three days and received into evidence various documents including, but not limited to, the social study, steps provided to Heidi in order to achieve reunification with her child, psychological and psychiatric evaluations, medical records of Heidi and the criminal records of Heidi and Reid.
FACTS
The court finds the following facts by clear and convincing evidence:
Prior to Michael being born, the court entered an order of temporary custody for two of Heidi's children, Zachary and William. DCF was granted custody of these children in October of 1996 because Zachary was beaten by Reid and Heidi attempted to hide the abuse, failed to get medical treatment, and failed to recognize the seriousness of Reid's abuse of her children.
In both 1996 and 1997, expectations, steps and court orders were entered providing that Reid was not to have any contact with Heidi or the children.
On February 21, 1997, mother was admitted to Cedar Crest Hospital after expressing suicidal and homicidal ideation. She was diagnosed with borderline personality disorder and posttraumatic stress disorder.
On or about November 10, 1997, DCF received a copy of a letter written by Heidi to the Governor of Connecticut. The letter is disturbing in that it states Heidi's belief that her children were mainly to blame for the abuse they experienced at the hands of Reid and reflects absolutely no insight as to the effect of her abusive relationship on her children.
On December 29, 1997, Michael H. was born. DCF filed a petition for neglect and obtained an order of temporary custody for this child on December 31, 1997. CT Page 15617
After Michael was committed, steps were issued for Heidi and Reid. Reid failed to comply with any of the expectations. He has failed to keep any appointments with DCF except for participating in a court order paternity test and attending one hearing regarding Michael. He has failed to keep his whereabouts known to DCF and never requested or attempted to begin visitation with Michael. He has failed to participate in any counseling. He has not complied with a restraining order that he not have contact with Heidi and her children. He has not signed any releases.
Heidi has partially complied with the specific steps entered by the court. Heidi has kept appointments with DCF with the exception of not attending administrative case reviews. With the exception of a short period of time, she has kept her whereabouts known to DCF. She has visited with the children as often as DCF permitted. Heidi has participated in some counseling. She attended counseling at Veterans Memorial Hospital with Susie Gibbs between December, 1997 and July, 1998. In July 1998, she was referred to and began attending counseling with Dianne Howe. She continued with this individual counseling until December 30, 1998. At that point, it is unclear from the record whether Heidi ceased counseling because Ms. Howe felt that she no longer needed counseling or that there was a lapse due to a change in staff. Heidi was not involved in any counseling between December of 1998 and May of 1999. The reason for this lapse is unclear but does not seem attributable to the mother's refusal to attend such counseling. DCF made a referral in May of 1999 to Catholic Families Services. Mother attended two sessions and then stopped attending after July 30, 1999.
Mother failed to cooperate with the restraining order to have no contact with Reid. This resulted in her having two children with Reid after the orders were entered. Heidi is no longer involved in a relationship with Reid.
Mother has accepted and cooperated with in-home support services referred by DCF. After Michael's younger brother, Thomas, was born on February 1, 1999, DCF put in place a family preservation program which mother successfully completed.
Mother has been able to maintain adequate housing. From September, 1997, through May of 1998 she resided at St. Vincent DePaul shelter. In May of 1998, she moved to Bloom's place, a transitional living program where she resided until October of CT Page 15618 1998. There was a brief gap between her residing at Bloom's place and her taking up residence at Shelter Plus Care. This residential program provides her with a subsidy for an apartment and qualifies her for mental health case management services.
Mother is currently employed by a department store. Mother has not been involved with the criminal justice system since Michael's commitment on November 20, 1998. Prior to his commitment, mother was arrested after she broke into Reid's home and confronted him about the fact that she was pregnant with his child.
Prior to Michael's commitment, Heidi participated in an evaluation conducted by Dr. David Mantell to assess her relationship with Michael. At that time, Dr. Mantell did not observe a relationship between Heidi and Michael and found the foster parents to be Michael's psychological parents. Prior to Michael's commitment, Dr. Richard Sadler conducted a court ordered psychiatric evaluation of Heidi. He found that she had involved herself in abusive relationships. He also found that she was intellectually limited, psychologically seriously impaired, and that she was not capable of safely parenting any child at that time.
The court is aware of only two evaluations that took place after Michael's commitment and after the applicable adjudicatory date of April 16, 1999. Dr. Mantell provided an updated relationship assessment. He did not provide an updated psychological evaluation for Heidi. Dr. Mantell again found there was no relationship between Heidi and Michael. This is not surprising given that the child has never lived with his mother. Heidi also engaged in an evaluation with Dr. Robert Meier on October 25, 1999. He found no indication of a serious thought or emotional disorder. He also found that mother has made significant changes in her life as evidenced by her ability to take care of her youngest child.
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that CT Page 15619 the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112 (c)(1).
The court finds by clear and convincing evidence that DCF did make reasonable efforts to reunify Heidi with her child. Specifically, DCF provided counseling services with the exception of the period January through May of 1999. DCF also assisted mother in finding appropriate housing. Finally, when Thomas was born, DCF put in place a family preservation program. DCF also paid for a taxi service to and from visits and family therapy assessments.
B. Statutory Grounds
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512 (1998); Conn. Gen. Stat.
§ 17a-112 (c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a). The relevant date in this case is April 16, 1999.
C. Failure to Rehabilitate
A statutory ground for termination arises when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat.
§ 17a-112 (c)(b)(1). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." Inre Luis C., 210 Conn. 157, 167 (1989). No dispute exists that the court has previously found the child to have been neglected, thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. §17a-112 (c)(3)(B). CT Page 15620
With regard to the father, Reid, the court finds by clear and convincing evidence he has failed to rehabilitate within the meaning of Conn. Gen. Stat. § 17a-112 (c)(3)(b). He has failed to engage in any services. He has made it clear to DCF that he wants no involvement in the child's life and has never even visited with the child. Accordingly, the court finds by clear and convincing evidence that he has failed to achieve such a degree of personal rehabilitation as would encourage the belief that he could assume a responsible position in the life of the child.
With regard to Heidi, the court finds that DCF has not proven by clear and convincing evidence that she has "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. § 17a-112
(c)(3)(B). This statute does not require "parents to be able to assume full responsibility for a child, without the use of available support programs." In re Jessica M., 49 Conn. App. 229,240 (1998).
There is no question that prior to Michael's commitment, mother was experiencing significant difficulties in her life. However, since Michael's commitment, she has been involved in counseling, she has maintained employment and she has had adequate housing. Perhaps most importantly, her youngest child, Thomas, was born on February 1, 1999, and as of April 16, 1999, remained in her care.
Although it is possible that mother's mental health would prevent her from ever being able to assume a responsible position in this child's life, DCF failed to present any evidence by a psychologist or psychiatrist assessing the psychological or psychiatric condition of Heidi since Michael's commitment on November 20, 1998. Because the facts presented demonstrate that mother has made progress and no expert testimony was presented to the court assessing mother's psychological or psychiatric condition, as of April 16, 1999, DCF has failed to prove by clear and convincing evidence that mother has failed to rehabilitate within the meaning of the statute.[2] "Since the termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children . . . courts must require strict adherence to the statutory standards." In reMigdalia, 6 Conn. App. 94, 208-9, cert. denied, 199 Conn. 809
CT Page 15621 (1986). Accordingly, the termination of parental rights with regard to Heidi H. is hereby dismissed.[3]
D. Abandonment
 Conn. Gen. Stat. § 17a-112 (c)(3)(A) provides that a ground for termination exists when "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia,6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 809 (1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209. The statutory term "maintain" implies a "continuing, reasonable degree of concern." Id. at 210. With regard to Reid, the court finds by clear and convincing evidence that this father abandoned his child.
"There are five general obligations to parenthood: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." In reJuvenile Appeal (Docket No. 9489), 183 Conn. 11, 14 (1981); In reMichael M., 29 Conn. App. 112, 121 (1992). Reid has not fulfilled any of these parental obligations. He has never visited with the child or expressed any concern over the well-being of the child. He has also never supplied the necessary food, clothing and medical care or an adequate domicile. He has not furnished any social and religious guidance. Accordingly, the court finds that Reid has abandoned the child within the meaning of the statute.
E. No Ongoing Parent-Child Relationship
Petition also alleges that Reid has no ongoing parent/child relationship that ordinarily develops as the result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such a parent/child CT Page 15622 relationship would be detrimental to the best interest of the child. Conn. Gen. Stat. § 17a-112 (c)(3)(D). The Connecticut Supreme Court in In re Jessica M., 217 Conn. 459 (1991) found that termination on these grounds is inappropriate unless "the child has no present memories or feelings for the natural parent" or that if such child does have some memories, "no positive emotional aspects of their relationship survive." Id. at 468. The court finds by clear and convincing evidence that since Michael has never visited with his father and is now almost two years old that he has no positive memories or feelings for Reid.
Because the court has determined that no relationship exists, it must next consider whether to allow further time to develop such a relationship would be detrimental to the best interests of the child. In this case, further time would be both detrimental and nonproductive. This father has never expressed an interest in having a relationship with this child and therefore it is reasonable to infer that additional time would not result in any change in his attitude.
Accordingly, the court finds that there is no ongoing parent/child relationship within the meaning of the statute.
MANDATORY FINDINGS
With respect to the mandatory factual findings required byConn. Gen. Stat. § 17a-112 (d), except in the case where termination is based on consent, the court makes the following findings with regard to Reid:[4]
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent. The court finds that DCF attempted to facilitate reunion of Michael with Reid and that Reid did not take advantage of any services and/or visitation that was offered to him.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance Child Welfare Act of 1980. The court finds that DCF offered appropriate and timely services and guidance to Reid, but that he refused any such services.
3. The terms of any applicable court order entered into and agreed to by any individual or agency on the parent, and the CT Page 15623 extent to which all parties have fulfilled their obligations under such order. Reid failed to comply with any expectations. He violated court orders regarding contact with Heidi and the children.
4. The feelings and emotional ties of the child with respect to his parents, any guardian and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties. The tragedy in this case is that Michael has always lived with the same foster family and is significantly bonded to this family. Likewise, the foster family loves Michael and wants to adopt him. However, given that petitioner did not present sufficient evidence to sustain its burden of proof by clear and convincing evidence regarding termination of Heidi's parental rights, adoption of Michael by this foster family is not possible at this time. The child has no emotional ties with his father.
5. Age of the child. Michael is one year and eleven months old.
6. The effort the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child. Reid has made no effort to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent. Reid did not face unreasonable interference from anyone. He voluntarily chose not to have any involvement with his child.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn.Gen. Stat. § 17a-112 (c)(2). The court can consider all events CT Page 15624 occurring through the close of the dispositional hearing. Practice Book § 33-5.
The court finds by clear and convincing evidence that termination of Reid's parental rights are in the best interest of Michael. He has not had any involvement in this child's life and has made clear to DCF that he does not want any involvement. Further, Reid has a history of abusing small children. For all these reasons, the court determines that it is in Michael's best interest for a termination of parental rights to enter with respect to Reid. Accordingly, a termination of his parental rights is ordered.
CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT