******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BEN OMAR *v.* COMMISSIONER OF CORRECTION
## (AC 37185)

DiPentima, C. J., and Lavine and Bishop, Js.

*Syllabus*

The petitioner, who had been convicted of various drug related offenses, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance when she exposed his criminal history to the jury. At the petitioner's criminal trial, trial counsel had introduced into evidence a police incident report with an attached arrest warrant affidavit, which contained a list of the petitioner's prior convictions, some of which were for drug related offenses. The petitioner claimed that revealing his prior convictions damaged his credibility by demonstrating that he knew how to run a street level drug operation, using individuals as drug runners to avoid detection. The habeas court rendered judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Held* that the habeas court properly determined that the petitioner failed to prove that he was prejudiced by the allegedly deficient performance of his trial counsel, as the result of the petitioner's criminal trial would not have been different but for trial counsel's decision to expose his criminal history to the jury; the state presented a strong case against the petitioner, the evidence of his prior convictions was not the only evidence demonstrating that he knew how to use drug runners in a sophisticated street level drug operation, the jury knew in general terms about the petitioner's criminal history regardless of trial counsel's decision, as the prosecutor properly had questioned him on cross-examination about his criminal history and prior convictions without specifically identifying the offenses by name, which undermined the petitioner's credibility, and the trial court gave the jury a limiting instruction that the evidence of the petitioner's commission of the other crimes was admitted for the sole purpose of affecting his credibility, which the jury was presumed to have followed.

Argued December 7, 2017—officially released February 13, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Cobb, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Matthew C. Egan*, assigned counsel, with whom were *Emily Graner Sexton*, assigned counsel, and, on the brief, *James P. Sexton*, assigned counsel, and *Michael S. Taylor*, assigned counsel, for the appellant (petitioner).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Eva Lenczewski*, supervisory assistant state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Ben Omar, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. Following that denial, the habeas court granted his petition for certification to appeal. On appeal, the petitioner claims that the habeas court improperly rejected his contention that his trial counsel rendered ineffective assistance when she exposed his criminal history to the jury. Because we agree with the habeas court's conclusion that the petitioner failed to prove prejudice under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we affirm the judgment of the habeas court.

As this court set forth in *State* v. *Omar*, 136 Conn. App. 87, 43 A.3d 766, cert. denied, 305 Conn. 923, 47 A.3d 883 (2012), the jury reasonably could have found the following relevant facts. "On March 25, 2009, Waterbury police Lieutenant Edward Apicella led an undercover team to the intersection of North Main Street and West/East Farm Streets in Waterbury . . . in order to try 'to purchase narcotics from any individual who would solicit.' Apicella designated Officer Dedrick Wilcox of the Seymour police department to be the undercover purchaser because it was likely that he would not be recognized by the Waterbury street dealers as a police officer. As Wilcox was driving, a black female, later identified as Ida Mae Smith, nodded to him, and Wilcox pulled over. Smith asked, '[W]hat do you need?' and Wilcox responded, 'I need twenty of base,' which meant $20 worth of crack cocaine. Smith then held up two fingers and yelled across the street to the [petitioner], 'I need two.' Wilcox then handed Smith the money, at which point the [petitioner] walked to a nearby mailbox, reached into his pocket and placed two items on the top of the mailbox. Smith walked across the street and handed the money to the [petitioner], who pointed Smith toward the mailbox. Smith then walked to the mailbox, grabbed the items and handed Wilcox the items—two bags of crack cocaine—and said, '[Y]ou're all set.' Wilcox then left the scene and radioed to the surveillance team that the deal was done and met the officers at a prearranged location. The police did not immediately arrest the [petitioner] because they did not want to jeopardize Wilcox's safety or cover for future ongoing undercover operations. Instead, the [petitioner] was arrested six weeks later in May, 2009." Id., 89–90. Following a jury trial, the petitioner was convicted of various drug related offenses.[1] This court affirmed the petitioner's conviction on direct appeal. See id., 89.

On February 23, 2012, the petitioner filed a self-represented petition for a writ of habeas corpus. In a single count amended petition, he alleged that he was denied the effective assistance of trial counsel when Stephanie

L. Evans, his lawyer, "exposed to the jury [his] sale and possession of narcotics history and [his subsequent] August 12, 2009 arrest for drugs."[2] During the habeas trial, the petitioner specifically focused on Evans' decision to introduce a police incident report and an arrest warrant affidavit into evidence. Both of these items detailed the petitioner's previous convictions, which included drug related offenses.[3]

In its written decision denying the habeas petition, the habeas court noted that Evans introduced the arrest warrant affidavit into evidence "to emphasize the inconsistencies between the [testimony from the state's witnesses] and reports as to the weight of the narcotics seized [on March 25, 2009]." It concluded, however, that the petitioner failed to prove prejudice under *Strickland* and did not specifically address whether Evans rendered deficient performance. The petitioner appeals from this judgment. Additional facts will be set forth as necessary.

We begin with the applicable standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

The petitioner claims that the habeas court improperly rejected his contention that Evans rendered ineffective assistance when she exposed his criminal history to the jury. He argues that the "specific nature" of his previous convictions demonstrated that he knew how to run a street level drug operation and also damaged his credibility. Evans' decision to expose his criminal record to the jury, according to the petitioner, prejudiced him because the state's case hinged on a credibility contest between him and the arresting officers. Essentially, he argues that the jury would have found him more credible, thus strengthening his sole defense at trial—misidentification—if they did not know of his specific criminal record. We are unpersuaded.[4]

The following additional facts and procedural history are relevant to this claim. Lieutenant Apicella, a state's witness, testified at the petitioner's criminal trial. During her cross-examination of Apicella, Evans asked about his prior interactions with the petitioner and whether police had searched the petitioner on March 25, 2009.[5] While questioning Apicella, Evans requested that "the incident offense report [from March 25, 2009] with attached arrest warrant affidavit" become full defense exhibits. Both documents were admitted into evidence without objection, and Evans questioned Apicella about their contents. She also asked Apicella why

police did not arrest the petitioner on March 25, 2009. Specifically, she asked: "So you left [Smith and the petitioner] there for another month or so to continue to sell drugs?" Apicella responded in relevant part: "That will depend on [the petitioner's] conduct. . . . That's a decision that he would have to make."

The prosecutor revisited Apicella's familiarity with the petitioner on redirect-examination and specifically asked him about the petitioner's prior convictions detailed in paragraph 8 of the arrest warrant affidavit. See footnote 3 of this opinion. He also asked Apicella about the petitioner's August 12, 2009 "[arrest] for drugs" following a separate incident involving a confidential informant.

"In *Strickland* v. *Washington,* [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"With respect to the performance component . . . [t]o prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . .

"With respect to the prejudice component . . . the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Minor* v. *Commissioner of Correction,* 150 Conn. App. 756, 761–62, 92 A.3d 1008, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

We agree with the habeas court that the petitioner failed to prove prejudice. The state presented a strong case against him. Multiple police officers witnessed Smith provide Wilcox, an undercover police officer, with two items—later determined to be crack cocaine—

after she retrieved the items from the top of a mailbox. Police also observed Smith hold up "two fingers and [yell] across the street to the [petitioner], 'I need two' " after Wilcox asked for $20 worth of crack cocaine. See *State* v. *Omar*, supra, 136 Conn. App. 89–90. Multiple officers also positively identified the petitioner as the individual who placed the narcotics onto the top of the mailbox before Smith retrieved them.

The petitioner argues that his prior convictions, especially his narcotics convictions, were the only evidence demonstrating that he knew how to use drug runners in a sophisticated street level drug operation. That contention is not accurate. At the petitioner's criminal trial, several police officers testified generally about how street level drug operations frequently use "runners" to avoid police detection. They also testified that Smith signaled the petitioner after Wilcox asked for crack cocaine and that Smith gave the petitioner the money she received from Wilcox. The conduct of Smith and the petitioner generally aligned with the testimony of how drug dealers use runners, and Apicella testified that Smith admitted to "working as a runner with [the petitioner]." The police report and arrest warrant affidavit were, at most, cumulative and paled in comparison to other evidence reasonably demonstrating that the petitioner knew how to use drug runners.

The petitioner also testified at his criminal trial, and the prosecutor questioned him about having several felony convictions.[6] The petitioner does not dispute that the prosecutor properly questioned him about having prior convictions, and the record reveals that the prosecutor did not specifically identify the prior convictions by name.[7] Therefore, the jury knew, in general terms, about the petitioner's extensive criminal history regardless of Evans' decision to expose his specific criminal background to the jury. See, e.g., *State* v. *Pinnock*, 220 Conn. 765, 779–81, 601 A.2d 521 (1992) (felony conviction generally admissible to impeach witness' veracity, but where crime does not bear directly on truthfulness, references at trial should ordinarily only be to unspecified felony); see also General Statutes § 52-145 (b); Conn. Code Evid. § 6-7. The petitioner claims that the jury would have found him more credible if they were unaware of the specific named felonies of which he had been convicted. Even if we agree, any such marginal enhancement of his credibility would not undermine our confidence in the verdict. The state presented a strong case against the petitioner, and his credibility was undermined when the state cross-examined him about his general criminal background. We are therefore unpersuaded that the jury would have had a reasonable doubt respecting guilt if the jurors did not know the specific names of the petitioner's prior convictions.

Finally, the court instructed the jury in relevant part to consider that "[t]he commission of other crimes by

this [petitioner] has been admitted into evidence for the sole purpose of affecting his credibility." The petitioner concedes that the limiting instruction was not defective. Therefore, contrary to the petitioner's argument, the jury could not use evidence of his prior convictions to demonstrate that he knew how to run a sophisticated street level drug operation. Nor could the jury use that evidence to prove his guilt. See, e.g., *State* v. *Pharr*, 44 Conn. App. 561, 576, 691 A.2d 1081 (1997) (jury is presumed to follow trial court's instructions).[8]

We acknowledge that the possibility for harm always exists when prior, named convictions are introduced into evidence against a criminal defendant. And this is especially true when the defendant stands accused of the same or similar crimes of which he has been convicted of committing in the past. See, e.g., *State* v. *Geyer*, 194 Conn. 1, 14–15, 480 A.2d 489 (1984). Notwithstanding this, the petitioner must prove that there is a reasonable probability that, but for Evans' decision to expose his criminal history to the jury, the result of his criminal trial would have been different. See *Minor* v. *Commissioner of Correction*, supra, 150 Conn. App. 761–62. This he has failed to do.[9] The strength of the state's case, the prosecutor's permissible questioning of the petitioner about his criminal history on cross-examination, and the court's instructions lead us to conclude that the result of the petitioner's criminal trial would not have been different but for Evans' conduct. See, e.g., *Koslik* v. *Commissioner of Correction*, 127 Conn. App. 801, 812, 16 A.3d 753 (trial counsel introduced evidence of petitioner's prior conviction for same conduct he was accused of committing, but petitioner was not prejudiced due to strength of state's case), appeal dismissed, 301 Conn. 937, 23 A.3d 731 (2011) (certification improvidently granted). Accordingly, the habeas court properly determined that the petitioner failed to prove his ineffective assistance of counsel claim and correctly denied his petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion, the other judges concurred.

[1] The petitioner was found guilty of "possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), conspiracy to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-48 (a), sale of a controlled substance within 1500 feet of a school zone in violation of General Statutes § 21a-278a (b) and possession of a controlled substance within 1500 feet of a school zone in violation of General Statutes § 21a-278a (b)." *State* v. *Omar*, supra, 136 Conn. App. 89.

[2] The petitioner alleged that Evans rendered ineffective assistance in twelve different ways. On appeal, the petitioner claims only that the habeas court improperly concluded that Evans did not render ineffective assistance when she exposed the petitioner's criminal history to the jury.

[3] Paragraph 8 of the arrest warrant affidavit specifically detailed the petitioner's criminal history prior to being arrested for his involvement in the March 25, 2009 incident. That paragraph stated in relevant part: "[The petitioner] is a convicted felon and was arrested and convicted of the following charges: [p]ossession of [n]arcotics on 10/15/2007, [e]scape [f]irst on 5/1/2006, [f]ailure to [a]ppear [on] 5/5/2005, [two] counts of [c]riminal [p]osses-

sion of a [f]irearm on 7/31/2001, [a]ssault on a [p]olice [o]fficer on 5/3/94, [and two] [c]ounts of [s]ale of [n]arcotics on 5/3/94.”

[4] The parties disagree as to whether Evans provided deficient performance under the performance prong of *Strickland* and if that issue is even properly before us. We need not reach the performance prong, however, because we conclude that the petitioner failed to prove that he was prejudiced by Evans’ performance. See, e.g., *Minor* v. *Commissioner of Correction*, 150 Conn. App. 756, 762, 92 A.3d 1008, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

[5] Evans cross-examined Apicella in relevant part as follows:

“Q. Isn’t it true that [the petitioner] wasn’t arrested at that time because you, in fact, actually personally entered Bentley Bail Bonds and searched him and you found no money or drugs on him?

“A. No, ma’am.

“Q. You never conducted a search of his person?

“A. On that day no, ma’am.

“Q. On any other day?

“A. Not that I recall, ma’am.

“Q. Have you ever found drugs on [the petitioner]?

“A. I found a gun, ma’am, but not drugs, no.

“Q. Did you arrest him for that?

“A. Oh, I did, ma’am, yes.”

On recross-examination, Evans also asked Apicella whether the police had arrested the petitioner “prior to March for narcotics.” Apicella testified that they had. See *State* v. *Omar*, supra, 136 Conn. App. 95.

[6] We note that the prosecutor did not name the petitioner’s previous convictions during closing remarks. Rather, the prosecutor generally argued that the petitioner’s convictions affected his credibility.

[7] During the criminal trial, the prosecutor did, however, refer the petitioner to paragraph 8 of exhibit E, the arrest warrant affidavit, which listed the petitioner’s convictions by name and date. He then cross-examined the petitioner as follows:

“Q. Those are your felonies, aren’t they? Correct, sir?

“A. Yes.

“Q. You were convicted of all those, is that right?

“A. Yes.”

[8] The petitioner relies on *State* v. *Pharr*, 44 Conn. App. 561, 576, 691 A.2d 1081 (1997) (“[t]here are . . . occasions where the prejudice is so severe that curative instructions are unlikely to be effective”), to argue that the trial court’s instructions “did not undo the damage caused by . . . Evans admitting [his prior, named convictions] into evidence.” The petitioner’s reliance on *Pharr* is misplaced, as the circumstances in that case were markedly different. See id., 566, 576 (trial court unambiguously endorsed in-court testimony over “what a [police] report says” and jury charge did not specifically address court’s remarks on such endorsement).

[9] Although the petitioner alleged that Evans exposed his subsequent August 12, 2009 arrest to the jury, he focuses this appeal on her decision to introduce the March 25, 2009 police incident report and arrest warrant affidavit into evidence. He does not specifically argue how she exposed the subsequent August 12, 2009 arrest to the jury or how it prejudiced him in a distinct manner. To the extent that the petitioner presses this argument on appeal, we conclude that he failed to prove prejudice for the same reasons that the police incident report and arrest warrant affidavit did not prejudice him.